No. 24,127.

JOHN W. SPENA, *Appellee,* v. O. BRUCE GOFFE, O. B. GOFFE, GEORGE ESLINGER, J. S. ESLINGER and A. K. GOFFE, *Appellants.*

SYLLABUS BY THE COURT.

1. CORPORATION—*Telephone Company Issuing Increase of Stock—No Certificate from Public Utilities Commission.* Where additional stock of a public-service corporation, representing an attempted increase of capital, is issued in violation of the statutory provision that stock issued by such a corporation for anything but money shall be void unless the utilities commission shall have certified to the truth of a statement submitted by the corporation showing the value of the property to be exchanged for the new stock, the new stock may be held void at the instigation of an owner of original stock, in an action for the distribution of the corporate assets upon a voluntary dissolution.

2. SAME. The fact that the corporation, after such attempted increase, files annual reports with the commission stating its capital at the new amount does not constitute such an acquiescence on the part of the commission as to affect the rule stated in the preceding paragraph.

3. SAME—*Stockholder's Right to Challenge Validity of Increase of Stock—No Estoppel.* The fact that a stockholder voted in favor of a motion to increase the capital stock of a public-service corporation does not estop him to challenge the validity of new stock on account of its having been

issued in exchange for specific property at a valuation that had not been approved by the utilities commission.

4. SAME—*Division of Assets of Corporation—Competent Evidence.* In litigation between stockholders over the proper division of the assets of· a corporation upon dissolution, an entry in its record book purporting to set out the proceedings at a stockholders' meeting is competent evidence thereof.

5. SAME—*Competent Evidence Rejected—New Trial.* Because of an error in the rejection of evidence which may have affected the judgment a new trial is ordered, the basis of adjustment being indicated.

Appeal from Trego district court; A. D. GILKESON, judge, *pro tem.* Opinion filed February 10, 1923. Reversed.

*C. W. Burch, B. I. Litowich,* and *La Rue Royce,* all of Salina, for the appellants.

*Herman Long,* of Wa Keeney, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Wa Keeney Telephone Company, a Kansas corporation created in 1903, was dissolved by the voluntary action of its stockholders November 28, 1919, its property being sold to what is called a common-law company using the same name, composed of five persons who had been directors of the corporation. This action is brought against these persons by the holder of 13 shares of the capital stock of the corporation to recover a part of the value of the plant and of the money on hand at the time of the dissolution, in the proportion his holding bore to the total capital stock. He recovered substantially the amount of his claim and the defendants appeal.

When the stock held by the plaintiff (all but one share of which was originally held by others) was issued the corporation capital was $1,500, divided into 60 shares of $25 each. In March, 1913, an attempt was made to increase the capital stock from $1,500 to $25,000, calling for the issuance of 940 new shares of $25 each. The plaintiff asserts that this attempted increase was utterly void and of no effect, because no certificate of the public utilities commission was obtained such as is made essential by the statute, and also because aside from that consideration the procedure necessary for an increase of corporate capital was not followed. He contends that he is entitled to $13/60$ of the amount to be divided among the stockholders. The defendants claim that the evidence showed a valid

increase of the capital stock from $1,500 to $25,000 and that the plaintiff's interest is therefore $^{13}\!/_{1000}$ instead of $^{13}\!/_{60}$, and that even if the attempted increase was invalid the amount awarded him is too large.

1. An offer was made by the defendants to prove that a representative of the corporation presented the matter of the increase to a member of the utilities commission and that oral authority therefor was given. The offer was rejected. The statute provides for a written showing to, and the issuance of a certificate by, the commission (Gen. Stat. 1915, § 8353), and the ruling of the trial court appears to have been correct. That need not be passed on, however, for no sworn statement was made at any time as to what could have been proved. (Gen. Stat. 1915, § 7209.) There was testimony that the records of the utilities commission showed neither an application nor a certificate, and no evidence to the contrary was introduced. The effect of an omission to procure from the commission the required certificate must therefore be determined.

The new capital stock issued is claimed by the defendants to have been paid for by turning over to the corporation rural lines built and paid for with their own money by individuals who were managing the business. The statute requires that where a public utility is to issue stocks "wholly for property or services or other consideration than money," a verified statement shall be filed showing, among other things, "a general description and an estimated value of the property or services for which they are to be issued;" that the commission shall thereupon issue a certificate stating, among other things (if the facts permit) "that the statements contained in such application have been ascertained to be true;" and that "any issue of stocks, certificates, bonds, notes or other evidences of indebtedness not payable within one year, which shall be issued by such public utility or common carrier contrary to the provisions of this act shall be void." (Gen. Stat. 1915, § 8353.) The clause "not payable within one year" obviously refers to evidences of indebtedness, such as bonds and notes, and not to shares of stock. The utilities commission is required to pass upon the sufficiency of the showing made in support of an application to issue stock, and to grant or refuse a certificate accordingly. (*Railway Co. v. Utilities Commission*, 101 Kan. 557, 562, 563, 167 Pac. 1138.) The investigation of the value of property to be accepted for the issuance of stock in a public service corporation is obviously to prevent its

being taken at an excessive valuation, a primary but not necessarily the sole purpose being to avoid watering stock with a view to the justification of unduly high rates. If in the present case rural lines belonging to individuals were turned over to the corporation for stock at a valuation exceeding their real worth, the original stockholders obviously suffered a wrong by having the value of their holdings diminished, which would presumably have been prevented if the statute had been complied with and the property accepted only at such valuation as the utilities commission could approve. The scope of the statute is, in our judgment, broad enough to give protection to the stockholders who would thus be directly injured by its violation, and they are entitled to invoke its provisions. The defect in the new stock is not merely that it was issued in excess of the corporation's legal power—without affirmative grant of the right to do so— but that its issuance was in direct violation of a positive prohibition, accompanied by the declaration that stock so issued should be void. In *Utilities Co. v. Railway Co.*, 108 Kan. 285, 195 Pac. 889, a party to a contract, against whom specific performance was sought, contended that it was void because not approved by the utilities commission under section 8364 of the General Statutes of 1915. The majority of the court held that the statute did not apply to the contract involved, but the right of the party to invoke its provisions was not contested by anyone.

2. The defendants offered in evidence copies of reports made by the corporation to the utilities commission in 1917 and 1919 as required by the utilities act. (Gen. Stat. 1915, § 8351; Laws 1917, ch. 254, § 1), which contained the answers "1000," "$25," and "cash" respectively to the questions "How many shares of stock have been issued?" "What is the par value of each share of stock?" and "State how stock was paid for, that is, in cash, property, service, etc." The mere fact that reports containing these recitals were filed with the utilities commission would not constitute such an acquiescence by it in the corporation's increase of capital as to cure the omission to obtain the certificate prescribed by the statute.

3. The defendants claim that the plaintiff and his predecessors in interest were estopped by their conduct from questioning the validity of the new stock: An entry in the record book of the corporation (to which further reference will be hereinafter made) was offered in evidence, reciting that at a stockholders' meeting held March 24, 1913, a motion for the increase of the stock was carried,

the plaintiff voting in favor of it. Nothing in the motion suggested that the new stock was to be issued in exchange for the rural lines, or for anything but cash, and the fact that the plaintiff voted for the increase would not estop him to challenge the validity of stock issued for specific property the valuation of which had not been approved by the utilities commission. The other matters relied upon by the defendants in this connection are not sufficient to compel a finding of estoppel, whether or not they would justify it.

4. The offer to introduce the entry referred to in the preceding paragraph was made by the defendants, and denied on objection of the plaintiff. That ruling is complained of. The plaintiff at the trial objected to its admission upon grounds which his attorney thus stated: "for the reason that the proper foundation has not been laid for their introduction in evidence. I refer particularly that the by-laws provide that notice shall be given that all the stockholders shall be notified of the time and place the stockholders' meeting shall be called. It is not in evidence, at least on the face of the record, that there has been any compliance with these conditions. I am further calling the court's attention to where the increase of stock is more than doubled what two-thirds of an increase amounts to; subscribed for at the time the increase was authorized."

The grounds so stated go rather to the effect than to the competency of the evidence and were not such as to justify its rejection. In this court the plaintiff undertakes to support the ruling by saying in his brief:

"The court sustained an objection to the introduction of pages 35, 36, and 37 of a book labeled 'Combined Record Book,' said pages being marked Exhibit 'D,' on the ground that no foundation had been laid for the introduction of the said exhibit. Each of the three pages purports to be signed by Mary L. Shideler, Sec.-Treas., and O. W. Shideler, Pres.; but obviously, the whole thing is written and signed by the same hand; the two names as well as the body of the record is all in the same handwriting. The book was produced in court by O. Bruce Goffe, who first became interested in the telephone company about January, 1917; there was no proof as to where he obtained the book or how he came to be in possession of it; there was no proof as to what if anything was in the book when he first came into possession of it; no proof that said pages 35, 36, and 37 were in the handwriting of anyone who was ever an officer of the company, nor that the book was a corporation record in the year 1913. The proof does not affirmatively show that this whole book was not written up after the commencement of this litigation with a view to its use as evidence in this case. And the entire record or purported record pertaining to this so-called increase of capital stock was so thoroughly impeached as a fraudulent and fictitious record that the court was certainly

justified in demanding some preliminary proof before admitting the book in evidence."

A witness identified the book as the "Corporation Record Book" and testified that it was "a record of the meetings and by-laws of the company." Other entries in it were admitted. We do not think the objection interposed at the trial fairly advised the defendants that a point was intended to be made of the omission to show by whom and when the entries were made. The general objection as to the want of a proper foundation was qualified by the specific application relating to the giving of notice of a meeting. Had the objection now urged been stated at the time, the defendants would have had an opportunity to meet it which is now denied them.

The statute in terms makes the records of a domestic corporation competent evidence in an action to which the corporation is a party. (Gen. Stat. 1915, § 2160.) This provision is, of course, cumulative and not restrictive. Apart from the statute we think the books of a corporation are admissable to prove its proceedings where the controversy is between stockholders. "The books and records of a corporation are competent evidence to prove its . . . corporate acts and proceedings generally." (22 C. J. 896, 897.) "The minutes of a corporation may be offered in evidence in controversies between members of a corporation." (*Royce v. Insurance Co.*, 107 Kan. 245, 249, 191 Pac. 581.) See, also, 10 R. C. L. 1168-1170; Note, Ann. Cas, 1917 D 558.

Although we have held that if the plaintiff voted for the stock increase, that would not prevent his attacking the validity of the new stock that was issued, the evidence of what was done at the meeting is an important part of the history of the transaction. Although the stock is invalid as such, its transfer passed to the transferees whatever right the original holder had to look to the corporation or its assets for restoration of what it received from him, and the extent of that right may depend upon the circumstances under which the invalid stock was issued.

5. The plaintiff and most of those whose stock he procured originally held certificates containing statements that the holder of each share was entitled to use a telephone at a cost of not more than 75 cents a month, in lieu of dividends. This arrangement continued until June, 1917, when it was discontinued upon notice from the utilities commission that it amounted to an unlawful discrimination. This circumstance does not, so far as we discover, affect the

rights of the parties with respect to a distribution of the assets.
The plaintiff in his brief estimates the saving to the stockholder on
account of the cheaper rate while it was in vogue at $1.25 to $1.50
a month.

The whole telephone plant, including the rural lines but not the
money on hand, which amounted to $6,076.77, was sold to the de-
fendants in a lump sum for $21,000. The plaintiff's judgment was
for $4,333.33. How it was arrived at is not shown, no special find-
ings having been made or asked for, although the case was pe-
culiarly one in which they would have been of much help to a re-
viewing court. The plaintiff suggests that the trial court treated
the rural lines as no part of the corporate property, and estimated
the market value of what the corporation owned, including the
$6,076.77, at $20,000, allowing the plaintiff $\frac{13}{60}$ of this, or the amount
of the judgment—$4,333.33. The plaintiff presents a computation,
based on an engineer's report made to the corporation in 1920, and
filed with the utilities commission, on which he (the plaintiff)
figures the value of the corporate property at $20,621.57, made up
of these items: cost in 1914, $9,090.50; 60 per cent added for in-
crease, $5,454.30; cash on hand, $6,076.77.

If the judgment were to stand, in return for $25 paid in 1908 for
one share of stock, besides having had the benefit of a reduction
in telephone rates for nine years, the plaintiff would receive $334.61,
with interest from May 16, 1921, and a like amount upon each of
the twelve shares assigned to him. The yield is so disproportionate
to the investment as in itself to be a serious challenge of the justice
of the decision. The difficulty of the trial judge in reaching a right
conclusion was increased by the failure of the defendants to pro-
duce evidence upon which a fair adjustment could be made. For
the error in the rejection of evidence a new trial will be ordered, the
invalidity of the additional stock, however, to be treated as es-
tablished. We think, moreover, the award to the plaintiff was made
upon a wrong theory, although a specific ruling in that regard is
prevented because the basis employed is not definitely shown. The
rural lines were used in connection with the city plant as one con-
cern. If they were delivered to and accepted by the company in
exchange for the invalid stock, and thereafter appropriated by it
and used as its own, the former owners making no claim to them,
they became substantially a part of the corporate property, not-
withstanding the want of legal consideration; and if it shall be

found that this took place the defendants, as successors in interest of those who turned the property over to the company, should be compensated by a payment of its value at the time of its delivery, out of the $21,000 for which the whole property was sold, before a distribution of the remainder is made among the stockholders. The failure of those attempting to bring about the increase in the capital stock to comply with the statute sufficiently to make the attempt legally successful was not of such character as to justify denying them or their successors the return of what they actually contributed to the corporation. (See 14 C. J. 501, 502.) The court has not been asked to set aside the sale of the plant to the defendants on the ground of their having been directors in the corporation, and it is not necessarily void for that reason, for opportunity was given for other bidders. The selling price should therefore be the basis of distribution. If it shall be found that the rural lines did not become the property of the corporation then the $21,000 should be divided in the proportion the value of the corporation property (other than the cash on hand) bears to that of the rural lines, the stockholders as such receiving only the portion corresponding to the value of the corporate property. The cash should be divided between the corporation and the defendants in such proprotion as it shall be ascertained to have been earned by the corporate property on the one hand and the rural lines on the other, as nearly as that matter can be determined, making the division in proportion to the value of the respective properties if no better basis can be found.

The judgment is reversed and the cause is remanded for a new trial.

BURCH, J., not sitting.