Chicago Title and Trust Company and Doris A. Case, Executors of the Estate of Elmer G. Case, Deceased, Appellants, v. Central Republic Trust Company et al. Sidney Pellar et al., Appellees.

Gen. No. 40,471.

Opinion
filed April 10, 1939. Supplemental opinion filed and rehearing denied
April 24, 1939.

JUDAH, REICHMANN, TRUMBULL, COX & STERN, of Chicago, for appellants; A. F. REICHMANN, of counsel.

JACOBSON, MERRICK, NIERMAN & SILBERT, of Chicago, for certain appellees; DAVID SILBERT, of counsel.

MCINERNEY, EPSTEIN & ARVEY and GROSSMAN & GROSSMAN, all of Chicago, for certain other appellees; GEORGE L. SIEGEL and LOUIS GROSSMAN, of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiffs appeal from a decree entered July 1, 1938, which dismissed their complaint with amendments for want of equity, and granted defendants relief prayed in their cross-bills. The suit was filed December 8, 1932, by Elmer G. Case. Pending the suit he died July 12, 1934, and his executors were substituted. The facts appearing from the pleadings and from evidence taken in open court are not conflicting. In the most part these consist of documents unquestioned.

Prior to June 28, 1929, Elmer G. Case was president and principal stockholder of the Case & Martin Pie Company. On that date the corporation entered into an agreement with the Pellar Pie Company, Inc., Patterson Pure Food and Pie Company and Moody & Waters Pie Company whereby it was agreed that these corporations would consolidate under the name of Case-Moody Pie Corporation, which was organized under the laws of Illinois in order to carry on the consolidation as agreed. The agreement provided that the stock of the new corporation (with the exception of nine shares issued to qualifying directors) was to be held by five trustees for the constituent companies and in proportion to their several interests as agreed. The agreement created a voting trust in favor of the five trustees, Case, Moody, Raleigh, Joseph Pellar, Sr., and Malatesta. These trustees on November 30, 1930, as of August 1, 1930, entered into an agreement whereby the number of shares issued to the constituent companies were recited, and it was agreed shares issued to the Pellar Pie Company would be held by the trustees primarily as security for the obligations of the Peller Pie Company on its note for $70,051.37, given by it to the Case-Moody Corporation pursuant to the consolidation agreement. The trust by its terms was to terminate in five years.

December 15, 1930, Case and the Pellars (Joseph, Charles, Matthew, Ralph, Benjamin and Sidney) entered into another trust agreement in which the Chi-

cago Title and Trust Company was named trustee. This agreement recited that Elmer G. Case had deposited with the trustee a note dated June 30, 1929, to the order of Elmer G. Case, executed by the Case-Moody Pie Corporation, for the amount of $287,260.90; that there was also deposited with the trustee individual notes of Mr. Case aggregating $91,000, each payable severally to the individual Pellars; that there were also deposited with the trustee two contracts, one between Joseph Pellar and Case and the other between Charles Pellar and Case, and with these two contracts six stock certificates each representing 583⅓ shares of the stock of the Pellar Pie Company, in the aggregate 3,500 shares, which it was agreed would be held by the trustees as collateral security for the payment of the notes of Elmer G. Case to the amount of $91,000, and the performance of the terms and conditions of the contracts entered into between Case and Joseph Pellar and Case and Charles Pellar. The trust agreement granted the usual powers for the sale of the security in case of default, etc.

On this date (December 15, 1930) Case purchased from the six Pellars 3,500 shares of the capital stock of the Pellar Pie Company. The agreement for the purchase was in writing, and Case agreed to pay for the 3,500 shares of stock, $60,000, and executed his notes for that amount, payable in instalments through a period of years. At the same time he entered into another written agreement with Joseph Pellar by which Case promised to use his best endeavors to have Joseph's employment with the Case-Moody Pie Company continued at an annual salary of $13,000, and a like agreement with Charles Pellar to make like endeavors to have his employment continued at a salary of $10,000 per annum.

December 8, 1932, Elmer G. Case filed his original complaint against the trustee, the administrators of

Joseph Pellar's estate and the other Pellars, in which he set up that the purchase by him of the stock of the Pellar Pie Company on December 15, 1930, and the execution of the trust agreement, the notes, etc., had been obtained by false representations. The bill prayed that the notes and the written agreements might be canceled and the transactions set aside. Case died, and his attorney, Charles R. Brown, who had represented him in the transactions, also passed away pending the litigation. The executors of Case decided to abandon the theory on which the bill was filed for the reason (as complaint states) that the evidence of Brown and Case was not available.

December 10, 1937, an amendment to the bill was filed which for the first time charged that the consideration for the execution of the notes, the trust agreement, contracts, etc., was the 3,500 shares of the capital stock of the Pellar Pie Company which had been transferred to Case and deposited with the trustee. The amendment averred the stock in question was void; that the consideration therefore had failed wholly; that plaintiffs were entitled to the cancellation of the alleged trust agreement, the return of the notes of Case and the note of the Case-Moody Pie Corporation. The bill averred that 2,000 of the shares of stock sold to Case were void because the issuance thereof had not been reported to the secretary of State within 30 days, as required by section 28 of the General Corporation Act (Callaghan's Ill. Statutes Anno., vol. 2, p. 1904). By amendment it was averred that knowledge of the fact of noncompliance with this section of the law first came to the knowledge of plaintiffs in or about April, 1934, when Mr. Thornton, one of the attorneys for plaintiffs, was engaged in the trial of another case.

The amended bill averred the incorporation of the Pellar Pie Company under the name of Pellar Broth-

ers Company and under the laws of Illinois on April 2, 1924, the change of its capital structure November 9, 1926, the increase of its capital stock December 10, 1926, the change of its name to Pellar Pie Company, Inc., May 9, 1928, and on the same date the increase of its capital stock by resolution passed at a joint meeting of stockholders and directors directing the issuance of 2,000 additional shares to be distributed to stockholders of record and to be issued to the six Pellars pro rata, giving to them a total of 5,300 shares or 583⅓ shares each. The bill averred these shares were the stock sold to Case and that the 3,500 shares transferred to his name included the 2,000 shares thus issued.

At the time of the sales of the shares December 15, 1930, the General Corporation Act of 1919, as amended (see Laws of 1919, p. 312; Ill. Business Corporation Act Anno., p. 503; Callaghan's Ill. Stats. Anno., vol. 2, p. 1859) was in force.

Section 28 (see Ill. Business Corporation Act Annotated, p. 513) was as follows:

"Whenever stock, not previously reported to the Secretary of State as issued, has been issued within the authorized limit fixed by an approved statement of incorporation or certificate of increase in capital stock of a domestic or foreign corporation, including railroads, a statement subscribed and sworn to by the president or vice president, and attested by the secretary or by an assistant secretary, or other officer in case of a foreign corporation, shall be filed in the office of the Secretary of State within thirty days after the issuance of such additional stock pursuant to authorization thereof by the board of directors, which statement shall set forth:

"(1) The total amount of the capital stock authorized by the articles of incorporation.

"(2) A statement of the additional stock issued since the issuance of certificate of incorporation, the last certificate of increase in capital stock, or the filing of the last statement, and the manner in which it is paid up, with a description and valuation of property, if any, received in payment of such stock and that of the capital stock then issued at least one-half has been paid in, in money or property. Upon receipt of such statement the Secretary of State shall examine the same and if it is in conformity with the provisions of this Act and is accompanied by the fees hereinafter required, he shall endorse thereon the word 'filed.' No issuance of stock subsequent to the granting of license or certificate of incorporation or increase in capital stock shall be lawful, until the statement required by this section shall have been filed in the office of the Secretary of State and the fees hereinafter required have been paid to him, and the person to whom such stock was issued may recover from the corporation the amount paid thereon together with interest and his reasonable attorney fees.

"Promissory notes shall not be accepted in payment or part payment of stock issued in pursuance of any of the provisions of this Act.

"As amended by L. 1923, p. 283, June 28, July 1; L. 1927, p. 354, approved and in force May 12."

The amendments to the bill averred that neither the Pellar Pie Company nor its officers complied with section 28 of the General Corporation Act, in that they failed within 30 days after this stock was issued to file with the secretary of State a statement under oath reporting the issuance of the stock, the amount paid therefor, etc., with payment of fees, as required by section 28 of the statute. By later amendments the complainant set up facts tending to excuse apparent laches, and also by amendment of February 1, 1938,

averred that the transfer of this stock to Case was in violation of the provisions of the Uniform Stock Transfer Act (Callaghan's Illinois Stats. Anno., vol. 2, p. 2009); further, that the stock was purchased by Case relying upon an affidavit executed and delivered to him by one of the vendors to the effect that the total stock of the Pellar Pie Corporation consisted of 4,188 shares of which the 3,500 shares to be sold were more than ⅔ and in which the validity of the stock so sold was warranted.

The administrators of the estate of Joseph Pellar answered the bill and amendments denying material allegations, while the other five Pellars (defendants) made a motion to strike the bill with amendments, which was granted. In the meantime the Pellars and the administrators of the estate of Joseph Pellar filed counterclaims asserting the validity of their transactions with Case, his default in payment of his notes and the nonperformance of certain provisions of the trust agreement and prayed that the trustee might be directed to carry out the same. Complainants answered, denying these allegations and setting up the material facts averred in the amendments to the original bill.

The cause was put at issue and heard in open court. As already stated, the evidence was not conflicting. The decree was entered July 1, 1938, as above stated. The case turns upon the question as to whether the stock of the Pellar Pie Company, Inc., sold to Case was void by reason of the failure of the Pellar Company to report the issuance of the stock to the secretary of State.

It is plaintiffs' theory that of the 3,500 shares of stock sold to Case, 2,000 were void because of the failure to report the issuance thereof as required by section 28; that Case therefore had a right to rescind the purchase in its entirety and obtain relief as prayed in his bill; that for the same reason the counterclaimants may not enforce the contract of sale or the collateral

trust agreement and that the counterclaim should have been dismissed for want of equity; and also for the reason that defendants breached the statutory warranty of the Uniform Stock Transfer Act and representations stated in the affidavit delivered by the Pellars to Mr. Case at the time of the sale as an inducement to his purchase of the stock. Plaintiffs also contend they are not estopped or in any manner guilty of laches.

Section 28 was construed in *Packard DeLuxe Lines, Inc. v. Hudson,* 248 Ill. App. 579, where it was held that when in the statement of incorporation, amendment to charter, or certificate of increase of stock filed with the secretary of State as provided for in other sections of the statute, it is said that certain shares are to be issued *at once,* section 28 becomes inapplicable and a second report unnecessary. The pleadings do not expressly negative such former report, but the amendments to the bill set up in detail facts as to the organization of the corporation and its capital structure, which compels the inference that 2,000 of the 3,500 shares were never reported in either way. The motion to strike admitted these averments and the evidence submitted on the issues raised by the amended bill and answer and counterclaims includes the certificate of the secretary of State to the effect that this issue of stock had not been reported as required. We think on this record it must be held that 2,000 shares were not reported in either way.

The question for decision is thus narrowed to an inquiry as to what was the legal effect of the failure to report the issuance of this stock. Plaintiff says the stock thereby becomes absolutely illegal and void; that in the absence of creditors an estoppel cannot arise as against the purchaser and that there has been an entire failure of consideration. On the other hand, defendants contend that at most the failure to report was a mere irregularity rendering the issuance of the

stock voidable in the limited way described in the statute at the election of the person to whom the shares were originally issued in a proceeding brought against the corporation. Defendants further say that at any rate the plaintiffs and their testator waived all irregularity and by voting the stock with knowledge and in other ways exercising dominion over it, are now estopped. At any rate they say annual reports and other documents filed and payment to the secretary of State of fees required showed substantial compliance with the statute. We are not disposed to hold that information stated in annual reports could be substituted for the specific report required by section 28. If the stock was void it could not be made valid by an annual report. We have, however, after consideration of the cases cited, concluded that the stock, although not reported, was not absolutely void.

It may be well to recall fundamentals. A corporation is a legal entity. It owes its existence to the fiat of law. Its being and its powers are from the sovereign state as its will is made known through legislative enactment. In the absence of legislative authority neither the corporation itself nor capital stock can exist and any attempt to create these is void. But if authority is granted failure to comply with mere directions as to the manner in which the power may be exercised will not render an act pursuant to the authority void in the absence of an expression of legislative intention to that effect. Here the statute gave the right to create the corporation and gave to the corporation created the power to issue capital stock. The direction that after it was issued a report thereof should be filed with the secretary of State seems to have been a provision the violation of which would amount to no more than mere irregularity. Cook on Corporations, 8th ed., vol. 1, par. 291, p. 977; *Marshall v. Keach,* 227 Ill. 35; Fletcher Cyclopedia of Corporations, Perm. Ed., vol. 11, ch. 58, sec. 5167 *et seq.,* p. 357. There is no

allegation the stock was issued wrongfully in the first place, that it was not paid for, or that its issuance in any way operated to defraud any stockholder or any other person. Complainants cite *Cincinnati Mut. Health Assur. Co. v. Rosenthal,* 55 Ill. 85; *Union Ry. Co. v. Sneed,* 99 Tenn. 1, 41 S. W. 364; *Spena v. Goffe,* 112 Kan. 693, 212 Pac. 1093, and other cases, all of which we have examined.

The *Rosenthal* case involved the question of the right of the State to refuse to authorize a foreign insurance company to do business in this State. The powers of the sovereign State were challenged there and the court held that the State could authorize or refuse to authorize, and that the failure to authorize left a contract made by the foreign corporation entirely void in so far as its enforcement by the corporation was concerned. Significantly, however, the court refused to hold the contract absolutely void. The court said that the question of whether the party to whom the insurance policy was issued could maintain an action upon it against the foreign corporation was not before it and would not be decided.

*Union Ry. Co. v. Sneed,* 99 Tenn. 1, 41 S. W. 364, was a case where the statute authorized a corporation to increase the amount of its capital stock upon the performance of certain conditions precedent. The conditions were not complied with. The increase was held to be illegal and void. It was also held the corporation therefore could not compel a subscriber for the stock to pay his subscription.

In *Spena v. Goffe,* 112 Kan. 693, 212 Pac. 1093, the issue of stock by a public utilities corporation was involved. As a condition precedent to an increase of the capital stock the Kansas statute required the proposed increase to be approved by the public utilities commission. The evidence showed that the proposition was not submitted to the utilities commission and it was held that the unauthorized stock issued was

void. As a matter of fact, the statute expressly declared this should be the case if stock was so issued without authority.

Plaintiffs also call our attention to *Diversey v. Smith*, 103 Ill. 378; *Loverin v. McLaughlin*, 161 Ill. 417; *People v. Mackey*, 255 Ill. 144; *M. H. Vestal Co. v. Robertson*, 277 Ill. 425, and urges these and other authorities for the proposition that where a statute requires certain things to be done this is universally held to be the equivalent of an express prohibition against their being done in any other manner than that provided by the statute.

In the *Diversey-Smith* case the plaintiff sued under the provisions of an act in force July 1, 1869, which prescribed certain conditions precedent to the incorporation of fire and marine insurance companies, such as submission of the charter to the attorney general of the State and certification of the same by the attorney general to the auditor of public accounts, as complying with the statute, the appointment of appraisers by the auditor who would certify under oath that the capital stock had been paid for, this certificate to be filed with the auditor who would thereupon deliver to the incorporators a certified copy of the charter of the corporation, which should by the corporation be filed in the office of the county clerk where the company was located. This, the statute stated, would be the authority of the company to commence business. The suit was against a stockholder of the company on a policy issued by it, and the question for decision was whether the provision of the statute under which this liability was claimed made the suit one for a statutory penalty. This was decided in the affirmative. The opinion of the court hardly sustains the proposition as stated in plaintiff's brief. It says:

" 'It is,' says Dwarris, 'a maxim, *generally* true, *that if an affirmative statute, which is introductive of a new law, directs a thing to be done* in *a certain man-*

*ner,* that thing shall not, even although there are no negative words, be done in any other manner.' Potter's Dwarris on Statutes, 72.''

In *Loverin v. McLaughlin,* 161 Ill. 417, also relied on, the plaintiff sued defendants, who were directors of a corporation, under section 18 of the then Corporation Act (1 Starr & Curtis, chap. 32, p. 617) which provided that if any persons assumed to exercise corporate powers without complying with its provisions they should be jointly and severally liable for all debts and liabilities made by them in the name of the corporation. The question for decision was whether upon failure to record the certificate with the recorder of deeds, as directed by the statute, the directors and officers were liable for debts and liabilities contracted in the name of the corporation. The Supreme Court said it was a question of the intention of the legislature and analyzing the language of the statute, its object, etc., held the intention of the legislature was to create a personal liability, that the statute was penal in character and suit could be brought on it only at law. The opinion also intimated that on the theory of partnership the defendants would be held liable under the rules of the common law independent of the statute.

In *People v. Mackey,* 255 Ill. 144, leave was asked to bring a suit in quo warranto against a corporation to test the question of whether failure to record the certificate within two years, as required by section 4 of the Act of 1872, then applicable, was fatal to the existence of the corporation. It was held that it was and that refusal to permit the quo warranto to be filed upon a proper showing was reversible error.

In *M. H. Vestal Co. v. Robertson,* 277 Ill. 425, which plaintiff relies on, a suit was brought based on the statute to recover for debt incurred in the name of the corporation prior to the filing of the certificate with the recorder. The Supreme Court held that the statute was highly penal in its nature and that the supposed

action was barred by the statute of limitations which, for that class of actions, was two years.

Defendants cite many authorities which they deem to be analogous and which, it is urged, sustain their theory. To review all the cases cited would unduly extend this opinion and require labor the equivalent of writing a treatise. After all we come back to the simple question of ascertaining the legislative intention. The cases cited by both parties are to this effect. The intention of the legislature is controlling. This intention must be gathered from the language used, the context and the obvious objects and purposes for which the statute is enacted. In doubtful cases where the enforcement of the statute has been placed in some department of the government the interpretation adopted by that department is given much weight and will usually be adopted by the court. *People v. Fidelity & Casualty Co.*, 153 Ill. 25; *Barrett v. Reuter*, 289 Ill. App. 221. The interpretation placed upon this section by the State department appears from a printed form furnished by the secretary of State for the use of corporations reporting. It reads:

"All stock issued to citizens of Illinois and not reported to this office and fees paid within 30 days as required by Statute *is voidable at the option of the purchaser* until such stock is reported and the fees paid. The purchaser of such stock is entitled to a refund of his money paid therefor, together with his reasonable attorney fees. The corporation cannot lawfully transact business or maintain suit in any Court of this State *until* all fees are paid."

This interpretation seems to be based on the language of the section and to be justified by the precise words used. The issuance of the stock, it will be noticed, is to precede the filing of the report. The report is to be filed not before but after the stock has been issued. Filing is not made a condition precedent. The

statute directs the filing to be done after the stock has been issued. It states what penalty will be imposed for failure to comply with the direction to file. The penalty is that the purchaser of the stock from the corporation may, at his option, rescind and by suit at law recover the consideration therefor which he has paid to the corporation. The statute, as we said in *Oakley v. United Finance Corp.*, 293 Ill. App. 305, is highly penal and therefore to be strictly construed. It gives a right of action to the purchaser of the stock. It gives that right against the corporation that sells the stock. It does not extend the right of action to the purchaser's vendee or assignee. If the report is not filed within 30 days after the issuance of the stock the issuance of the stock is, by the words of the statute, made ''unlawful.'' This forms the basis for the statutory action by the purchaser against the corporation. But the statute does not say that the stock shall be void in the hands of any to whom it may come. The distinction is vital and controlling. The omission of the word ''void'' is significant. Reading the entire statute we find nothing inconsistent with this interpretation. It consists of 158 sections. Sections 148–153 prescribe penalties for failure to comply with various provisions of the act or for falsely reporting under oath. But in none of them is there anything inconsistent with this interpretation. We find no penalty prescribed for failure to file the report required by section 28 other than that stated in section 28 itself.

The objects of requiring the report to be filed are apparent. First, obviously to expedite the collection of the revenue due to the State from the corporation, and second, to make available to the public information as to the consideration received by the corporation from the sale of its stock (to a creditor most important). The penalty provided seems well designed to accomplish these purposes. A declaration that the

stock was void irrespective of the consideration received or the good faith of the corporation would not seem well designed to accomplish these purposes, but on the contrary to hinder. Defendants cite many cases construing statutes of other States in support of this view. *Larkin v. Maclellan,* 140 Md. 570, 118 Atl. 181, 188; *Zobrist v. Estes,* 65 Ore. 573, 133 Pac. 644; *Mitchell v. Mitchell, Woodbury Co.,* 263 Mass. 160, 160 N. E. 539. While not inapt, these cases are distinguishable as plaintiffs point out.

Therefore, in the absence of direct authority applicable and because this construction conforms to the contemporaneous interpretation adopted by the department of State to which the enforcement of the law was committed, because this interpretation is compelled by any fair construction of the words and language of the statute, and because it is consistent with the entire General Incorporation Act and tends to carry out the particular objects which section 28 was designed to accomplish, we hold that the stock in question was not void and that the court did not err in dismissing complainants' bill nor in granting relief to defendants on their cross-bills. The decree is therefore affirmed.

*Affirmed.*

McSurely, P. J., and O'Connor, J., concur.

### Supplemental Opinion.

In their petition for rehearing the executors complain that the court failed to pass upon the effect of the statutory warranty in paragraph 11 of the Uniform Stock Transfer Act and the express warranty embodied in the affidavit of the Pellars upon which the testator relied when he contracted to purchase the stock. It is true these questions were not discussed in the opinion. However, the briefs of plaintiffs challenged the validity of the stock because of alleged fail-

ure to comply with section 28 of the General Corporation Act and this was the only infirmity of the stock suggested. If the stock was valid these objections were without merit. We held it valid.

The petition is denied.

*Petition for rehearing denied.*