Donald L. Stroh, et al., Plaintiffs-Appellees, v. Blackhawk Holding Corporation, an Illinois Corporation, Ronald C. Vorhies, et al., and Mondo Corporation, an Illinois Corporation, Defendants-Appellants.

Gen. No. 69–35.

Third District.

December 5, 1969.

Mitchell and Russell, of Chicago (Thomas J. Russell, William H. Kelly, Jr., Gerald W. Shea, of Chicago, Mills & Roncone, of Lincoln, and Richard C. Ripple, of Carthage, of counsel), for appellants.

J. Stephen Crawford, Bishop and Crawford, of Chicago, and Froehling & Taylor, of Canton, for appellees.

ALLOY, J.

This is an appeal from a decree of the Circuit Court of Hancock County finding that the issue of 500,000 "Class B Shares" of defendant Blackhawk Holding Corporation, an Illinois corporation, do not constitute shares of stock and that the purported issuance thereof was an invalid and an ultra vires act of the defendant corporation and null and void ab initio. The basis for the finding of invalidity was a provision in the charter of the corporation with respect to the Class B stock which

provided that such shares were not entitled to any dividends "upon voluntary or involuntary liquidation or otherwise." Defendant holders of the Class B stock have appealed to this Court.

The record discloses that Blackhawk Holding Corporation was organized under the Illinois Business Corporation Act in November of 1963. The preorganization subscription agreements for stock provided that certain promoters (21 in number) would purchase 87,868 Class A shares of stock at $3.40 per share (a total of $298,751.20) and 500,000 shares of Class B stock were all to be purchased by certain of said promoters for $\frac{1}{4}$¢ per share (being a total for said stock of $1,250). The promoters were designated specifically in the Prospectus of the corporation.

The Blackhawk Corporation was authorized to invest in real estate and to finance business ventures by the terms of its charter. The Articles of Incorporation provided for authorization to issue two classes of stock, i. e., Class A stock authorization of three million shares having a par value of $1 per share and Class B authorization for 500,000 shares with no par value. The Articles of Incorporation further provided specifically "none of the shares of Class B stock shall be entitled to dividends either upon voluntary or involuntary liquidation or otherwise. No holder of any of the Class A or Class B shares shall, as such holder, have any right to purchase or subscribe for any stock of any class which the corporation may hereafter issue or sell."

The corporation applied to the Securities Division of the Office of the Secretary of State of Illinois to register the Class A shares for sale to the general public. The plan of the corporation was to sell 500,000 Class A shares to the general public for $4 per share. A prospectus was mailed out which described the Class A and Class B stock and quoted verbatim the restrictions placed

303

on the Class B stock. The prospectus contained the following statement:

"ORGANIZATION AND DEVELOPMENT

· · · · · ·

"Subscriptions for a total of $300,001.20 were sold to twenty-one persons, representing 87,868 Class A shares, the class now being offered, at the price of $3.40 per share ($298,751.20) and 500,000 Class B shares, at the price of one-fourth of a cent per share ($1,250.00); thus, said subscribers by virtue of a $300,001.20 investment, have control of the corporation having an initial capitalization of $2,000,000.00 after this offering."

In August 1964 at a shareholders meeting there was approval of a 2 for 1 split of the Class A stock and this increased Class A outstanding stock from 587,868 shares to 1,178,736 shares. The Class B stock was not changed. The corporation sold additional Class A shares to the public in 1965 for $4 a share.

The original board of directors which was elected in November of 1963 was reelected in April of 1964 and April of 1965 where the Class B shares represented 35.06% of the stock voted. There was no contest at either of such elections. The seven directors were elected without opposition at the 1966 meeting where the Class B shares represented 49.35% of the votes cast. There was no 1967 meeting and the 1968 meeting was the contested meeting that was held shortly after the present lawsuit was begun. Prior to the June 10, 1968 meeting a group of Class A shareholders (plaintiffs in the instant case) formed a shareholders' protective association and solicited proxies. The plaintiffs also attempted by court action to enjoin the voting of the Class B stock at the June 10, 1968 meeting, but the trial court refused to grant such injunction prior to the meeting.

The protective association voted 508,269 Class A shares at the 1968 meeting and the management voted 380,916 Class A shares. The management voted 427,831 Class B shares and the shareholders association voted 51,549 Class B shares. The Class B stock represented 35.47% of the stock voted at such June 10, 1968 meeting. As of June 10, 1968, there were 500,000 Class B shares and 1,237,681 Class A shares outstanding and the Class B shares represented 28.78% of the total voting shares of the company.

Edwin C. Mills, Jr., a former director and attorney for the Blackhawk Company since it was formed, became president of Blackhawk in March of 1967 and Mr. Roncone, a law partner of Mr. Mills became secretary of Blackhawk. Mr. Mills, Mr. Roncone, Mr. Roncone's brother, and Mr. Shea formed a new Illinois corporation known as Mondo Corp., and in 1967 Mondo began buying Class B and Class A stock of the former president of Blackhawk, Mr. Vorhies. Mondo contracted to purchase 52,138 Class A shares and 221,645 Class B shares of Blackhawk from Vorhies for a total consideration of $92,500. The book value of the Class A stock at the time of the purchase was 89¢ a share, making such 52,138 shares worth a book price of $46,402.82. Mondo also purchased Class B stock from other owners, paying the owners about 20 times the original purchase price of the Class B stock.

The Class B stock was first questioned in a letter from one of the plaintiffs to Mr. Mills, then president of Blackhawk in November 1967. On May 28, 1968, plaintiffs filed their complaint in which they sought to enjoin the voting of Class B stock at the June 10, 1968 meeting of Blackhawk Corporation. In the complaint, the allegations recited the history of the organization of the corporation and contended that the Class B shares do not in fact represent any interest in the assets, earnings, or surplus of the defendant corporation and that

305

they were not entitled to receive any dividends or a distribution of any of the assets of the corporation. It is recited in the complaint that for many years until 1961, the Illinois Business Corporation Act defined a share of stock of a business corporation in section 2(f) as "shares are the units into which the shareholders rights to participate in the control of the corporation, in its surplus or profits, or in a distribution of its assets, are divided." It is also alleged that since August 19, 1961, section 2.6 of the current statute provides a definition for shares as meaning "the unit into which proprietary interest of a corporation are divided." It is recited also that since 1947, the Illinois Business Corporation Act has permitted the right to vote to be separated from the ownership of a share of stock through a voting trust agreement but limited such trust agreement to ten year periods and that the Class B shares could not qualify under such provision. It is contended that the Class B shares amount to a permanent proxy in the hands of the holders. Plaintiffs prayed for a decree cancelling all such stock certificates and restraining defendants from voting them at any meeting of the shareholders.

In Count III of the complaint reference was made to an escrow arrangement of the proceeds of the sale of Class A stock to be completed before December 1, 1964, and a contended violation of such escrow arrangements by use of a $300,000 loan of corporate funds and certain other activities. The Count prayed that the court appoint a committee of Class A stockholders to take control of the corporation. Following the motion for summary judgment by plaintiffs, the trial court in a written opinion said:

> "Now, as to Count 3. I am not prepared on the pleadings before me to grant any present motion in respect to this count. Certainly, I am not pre-

306

pared on this date of the record to grant the relief requested by the Plaintiff."

Thereafter, a decree was entered which did not dispose of issues raised in Count III but found the Class B shares invalid and found that plaintiffs were not barred by estoppel or laches to raise such issues. The court certified that there was no just reason for delaying enforcement or appeal from the decree. As indicated heretofore, the only issue before us is the action of the trial court as specified in such decree.

A motion to strike certain portions of plaintiffs' brief and abstract and other documents has been filed in this Court which was taken with the case for consideration. In view of our determination of this cause, it is not necessary that we act on such motion to strike. Following the entry of the decree the defendants filed a motion for leave to amend their answer to assert an affirmative defense based upon the Uniform Commercial Code, 1967 Ill Rev Stats, chapter 26, § 8–202(2a), but such motion was denied. This section of the Commercial Code relates to the purchase of stock which has some defect, by a person who has no notice of such defect.

In determining the validity of the issuance of the Class B shares we must first look to the Illinois Business Corporation Act and the Constitution of the State of Illinois. In both the Illinois Business Corporation Act (1967 Ill Rev Stats, c 32, § 157.14) and the Constitution of the State of Illinois, Article XI, § 3, it is specifically provided that articles of incorporation may not limit or deny the voting power of the shares of any class in any Illinois corporation. In Chicago Title & Trust Co. v. Central Republic Trust Co., 299 Ill App 483, 492, 20 NE2d 351, the court observed:

"A corporation is a legal entity. It owes its existence to the fiat of law. Its being and its powers are from the sovereign state as its will is made

307

known through legislative enactment. In the absence of legislative authority neither the corporation itself nor capital stock can exist and any attempt to create these is void."

It is argued strenuously by the plaintiff that corporate stock must represent a share of the assets of a company and that the shareholder must have the right in addition to voting, to participate in dividends, or share in the distributions on liquidation, etc. While it is true that these rights are shared by most shareholders in a corporation, we find nowhere under Illinois statutes or elsewhere any absolute requirement other than that a shareholder be given the right to vote. Under the Illinois statutes and the Illinois Constitution, the rights of shareholders can be limited in every way except with respect to voting. We have found no satisfactory precedent which construes the meaning of section 157.14 of the Business Corporation Act with respect to shares of a corporation. Plaintiffs point out that in section 157.2–6, the Business Corporation Act provides " 'Shares' means the units into which the proprietary interest in the corporation are divided." It is also pointed out that for many years prior to 1963, shares were defined as "shares are the units into which the shareholder's right to participate in the control of the corporation, in its surplus or profits or in the distribution of its assets are divided." The definition of shares referred to does not specifically establish a requirement that all shares must have all or substantially all of the particular rights. The only limiting language in the Illinois statutes which relates to shares of corporate stock provides specifically that only the right of the shareholder to vote must be guaranteed.

Nor do we believe the discussion in Bowman v. Armour & Co., 17 Ill2d 43, 51, 160 NE2d 753, where the court was considering the situation in which the corporation attempted to force the owners of cumula-

tive preferred stock to take debenture bonds in exchange for their stock, is authority for saying that all shares of stock issued by an Illinois corporation must provide that holders of shares participate in the profits or distributions of the company. The court in Bowman v. Armour & Co., supra, at 47, specifically pointed out that the charter of an Illinois corporation is operative as between the corporation and the State and creates certain rights and duties as between the corporation and the shareholders as well as between the shareholders themselves. Similarly, Western Foundry Co. v. Wicker, 403 Ill 260, at 267, 85 NE2d 722, reiterated the same principle.

The articles of incorporation of Blackhawk Company in the cause before us recited that Class B shares were not to receive dividends "either upon voluntary or involuntary liquidation or otherwise." The Class B shares were issued in conformity with this provision. While there may be some ambiguity in the recital itself by what is meant by the words "or otherwise," for our purposes we have considered that this phrase refers back to dividends and in effect means that Class B shareholders are to receive no dividends of any kind. Defendants, in this Court, have contended that they are in fact entitled to current dividends and that the words "or otherwise" refer to liquidation, either voluntary or involuntary. Defendants contend, however, that irrespective of whether Class B shareholders are to receive dividends, it still does not affect the validity of the Class B stock. No authority has been presented to us nor have we been able to discover any authority which requires that all shareholders be entitled to dividends. The case of Tennant v. Epstein, 356 Ill 26, 189 NE 864, in effect, stands for the principle that the right of shareholders to share in dividends of any kind must be spelled out in the articles of incorporation. A corollary to this conclusion would be that nothing in the Illinois

Corporation Act prevents a limitation that certain shareholders are to receive no dividends. Section 157.41(h) of the Act provides:

> "No dividend shall be declared or paid contrary to any restrictions contained in the articles of incorporation."

We cannot agree with the contention of plaintiffs that the provisions of section 157.41(h) should be read with the implied understanding that it does not authorize the elimination of dividends entirely on any classes of stock.

It was the apparent purpose of Class B stock to give the owners of such stock voting control. The question is whether this invalidates the Class B stock. Plaintiffs have relied heavily upon Luthy v. Ream, 270 Ill 170, 110 NE 273 (a 1915 case), where the owners of 2,001 shares out of 4,000 voluntarily entered into a voting trust agreement. The court in that case held that since the voting power of the stock was separated from ownership of such stock, the real owners of the corporation did not have control of its management and, thus, such agreement was invalid. Since the case of Luthy v. Ream, supra, the Illinois Business Corporation Act was amended in 1947 to permit voting trusts to be established for periods of not to exceed 10 years. In the Luthy case, the shareholders, who had the responsibility to elect directors for the purpose of running the corporation agreed to dispense with this right to vote and vest it in some other party. In the case before us, this is not the situation. The shareholders are entitled to vote their shares and have not voluntarily entered into any agreement for the voting of their shares. If officers of the Blackhawk Company are guilty of acts contrary to corporate interest or violative of stockholders' interest, then Class A shareholders have remedies either in this proceeding or otherwise to compel them to act prudently or to reimburse the corporation for

damages or for other appropriate relief. This would not, however, be the basis for determining the Class B stock to be invalid in the first instance, particularly since the other shareholders knew of the nature of the Class B stock prior to acquisition of plaintiffs' shares.

Plaintiffs also contend that the Class B stock amounts to "buying" votes and that such action is illegal in Illinois under Brady v. Bean, 221 Ill App 279. In that case the agreement between two shareholders by which one shareholder agreed to pay a certain sum to the other shareholders if he would vote his stock a certain way was found to be invalid. This is not the situation in the present case. No agreement was established whereby anyone was to be paid for voting in a particular way. A premium may have been paid for the Class B stock. Many times, in case a person desires to acquire a controlling interest in a corporation, such buyer will pay a premium for the purpose of acquiring enough stock to gain a controlling interest in the corporation. We find no case or precedent which has concluded that such purchase would be illegal in this State.

In addition to the foregoing considerations, we have been most concerned with the question as to whether the State of Illinois, through approval of various articles of incorporation for Illinois corporations, as shown by the record, and approval of prospectuses of various corporate stock sales has, in fact, established a policy favoring stock of the type of the Class B issue in the instant case. The articles of incorporation of the Blackhawk Company were filed with the Secretary of the State of Illinois. Other articles of incorporation filed by Illinois corporations have contained similar provisions. The Securities Division of the office of the Secretary of State prohibits the sale of stock which would tend to defraud purchasers. The office has a rule that stocks, such as the Class B stock in the instant case, must be less than $\frac{1}{3}$ of the total number of shares outstanding

after the public offering. Other regulations require that the promoters of the corporation have at least a 15% equity interest of their own funds in the corporation. The policy, therefore, of the State of Illinois with respect to stocks, such as the Class B stock in the instant case, has been to permit it to be issued but to restrict the amount of such stock in order to protect investors.

■ It is argued that corporations such as Blackhawk which are formed with stocks similar to the Class B stock in the case before us are wrong and against public policy. The court in Schumann-Heink v. Folsom, 328 Ill 321, at page 330, 159 NE 250, stated:

> "In considering whether any contract is against public policy it should be remembered that it is to the interests of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts. Agreements are not held to be void, as being contrary to public policy, unless they be clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless they be manifestly injurious to the public welfare."

■ Another applicable principle is recited in People v. Fidelity & Casualty Co., 153 Ill 25, at 39, 38 NE 752, where the court stated:

> "Where the execution of statutes is confided to a particular department of the government the court will regard, and in doubtful cases adopt, the construction acted on by such department."

Similarly, the declared public policy of the State as expressed in the Act should not be lightly set aside as stated in Wall v. Pfanschmidt, 265 Ill 180, at page 192, 106 NE 785, where the court said:

> " 'When the sovereign power of the State has by written constitution declared the public policy of the

State on a particular subject, the legislative and judicial departments of the government must accept such declaration as final. When the legislature has declared, by law, the public policy of the State, the judicial department must remain silent, and if a modification or change in such policy is desired the lawmaking department must be applied to and not the judiciary, whose function it is to declare the law but not to make it.' "

If issuance of shares of Class B type stock should be prohibited, then such prohibition should come from the legislature, and the legislature could make provision by statute for regulation or protection of corporations which already have had such Class B type stock issued and outstanding, and make appropriate limitations or regulations with respect to such issue in the future. It is not the province of the courts to act to destroy the rights of shareholders whose shares have been issued pursuant to authorization of the State unless it has a clear duty and obligation to do so. We, therefore, must conclude that the trial court was in error in finding that the issuance of the Class B stock was ultra vires or invalid.

In view of our determination of the validity of the Class B shares of stock, it is not necessary that we consider the defenses of laches or estoppel which were raised by defendants in this cause (State Bank of Blue Island v. Benzing, 383 Ill 40, 54, 48 NE2d 333). Similarly, we do not believe it is necessary for us to determine whether or not the court was correct in refusing to allow defendants to interpose a new defense based upon the Illinois Uniform Commercial Code after the decree had been entered by the court. In connection with the latter contention, the section referred to was based on the assumption that the shares were for some reason found to be invalid.

Nothing which we have said in this opinion should be taken as affecting in any manner the issues raised under Count III of the complaint but are solely restricted to matters determined specifically by the terms of the decree. To the extent that such issues are raised, it is our conclusion that the Class B shares are valid and, also, that plaintiffs were not estopped or guilty of laches in such manner as to prevent them from raising the issue of such validity.

This cause will, therefore, be reversed and remanded to the Circuit Court of Hancock County with directions to such court to vacate the final decree entered in this cause finding the issuance of the Class B shares of Blackhawk Holding Corporation to be invalid and to proceed with the determination of this cause in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

STOUDER, P. J. and RYAN, J., concur.