(No. 25150.—
LOU W. KREICKER, Appellant, *vs.* THE NAYLOR PIPE COMPANY *ct al.* Appellees.

*Opinion filed October 11, 1940.*

Stone and Shaw, JJ., dissenting.

Gilbert F. Wagner, and Luis Kutner, for appellant.

D'Ancona, Pflaum & Kohlsaat, and Poppenhusen, Johnston, Thompson & Raymond, (Floyd E. Thompson, Albert K. Orschel, and D. H. Mann, of counsel,) for appellees.

Sidley, McPherson, Austin & Burgess, Green & Palmer, and Dobbins, Dobbins & Thomas, as *amici curiae*.

Mayer, Altheimer & Kabaker, Harry Hoffman, and Irving Goodman, as *amici curiae,* on rehearing.

Mr. Justice Murphy delivered the opinion of the court:

Appellant owns 622 shares of the preferred stock of the Naylor Pipe Company. On his own behalf and others similarly situated, he began this action in the superior court of Cook county against the corporation, its officers and directors, to have certain amendments to the corporate charter declared null and void, to enjoin the payment of dividends on a new class of stock created by the amendments, and for an accounting of dividends paid on such new stock.

The pleadings furnish a good example of how failure to observe fundamental principles of pleading tends to confuse the essential facts and obscure the real issues in the case.

The complaint contained nineteen paragraphs, which, by reason of the nature of the facts pleaded in the several paragraphs, may be divided into two parts. Paragraphs 1-12, inclusive, related to the charge that the amendments to the charter were not regularly adopted, and if they were, should be declared void because they destroy vested rights, and paragraphs 13-19, inclusive, attempted to set up fraud in procuring the adoption of such amendments. Appellees answered the first twelve paragraphs, and moved to strike paragraphs 13-19. The motion to strike was sustained and appellant elected to stand by that part of his complaint. Appellant replied to certain parts of appellees' answer and such reply was stricken. The reply was, in substance, a charge of fraud in the adoption of the charter amendments, and was substantially the same as that contained in paragraphs 13-19 of the complaint, and which had been stricken. A hearing was had at which appellant offered certified copies of the charter and his preferred stock certificate with certain printed matter thereon. The court rejected such proof, and no other evidence being introduced, the complaint was dismissed for want of equity. Appellant has appealed direct to this court, a constitutional question being involved. By permission of court, briefs have been filed by two groups of *amici curiae*.

The questions presented require a summarized statement of the pleadings. Many of the paragraphs of the complaint contain nothing but the conclusions of the pleader, and the legal effect to be given the charter amendments as interpreted by him. It is not possible to enter into a detailed discussion of the allegations of each paragraph.

The corporation was organized under the 1919 general Corporations act. (Smith-Hurd Stat. 1931, chap. 32, pars. 1 *et seq.*) The charter was amended in 1928, and appellant acquired his stock February 2, 1930. The articles of incorporation were again amended June 2, 1935, and it is these latter amendments that are involved. The pleadings

attack these amendments on three lines: (a) That they were not adopted by the stockholders at a regularly called meeting; (b) that if there was a meeting at which the amendments were adopted, the steps taken in the calling and holding of the meeting were permeated with fraud and the whole proceeding should be declared void; and (c) the amendments, if permitted to stand, destroy the vested rights appellant had in his preferred stock.

Article 10 of the articles of incorporation, as amended in 1928, related to the rights of the preferred stock, of which class appellant's was a part. In the first twelve paragraphs of the complaint, it is alleged that article 10 was in full force and effect. The pleader, evidently anticipating the defense would be that the 1936 amendments superseded article 10, pleaded, in general terms, that there had been an attempt to call a meeting of the stockholders to vote on the amendments, but that the meeting was not regularly called, and, as a result, there was no legal adoption of the amendments. Appellees' answer denied article 10 was in full force and effect, and set up, in detail, the facts in reference to the calling of a meeting of the stockholders, and the adoption of the amendments. Appellant did not traverse the facts pleaded in the answer except to allege in reply that the adoption of the amendments was procured by fraud. The facts pleaded in reply were not sufficient to form a basis for either actual or constructive fraud, and that part of appellant's reply was properly stricken. Appellant elected to stand by his reply. Appellees' answer alleging facts relating to the calling of the meeting of the stockholders and adoption of the amendments was not answered. The facts therein pleaded must be taken as true and as conclusively establishing the fact that the amendments were adopted at a regularly called meeting. *Watt* v. *Cecil,* 368 Ill. 510.

Paragraphs 13-19 of the complaint related to the charge of fraud claimed to have been practiced by the officers of the corporation in procuring the adoption of the amend-

ments. The allegations, like appellant's reply to appellees' answer, failed to state facts amounting to a charge of fraud, The court sustained appellees' motion to strike said paragraphs and there was no error in such ruling.

The first twelve paragraphs of the complaint and appellees' answer show, in addition to the facts already stated, the following: As amended in 1928, the capital structure of the corporation was $1,000,000 with stock divided into two classes—20,000 shares of preferred stock with a par value of $50 per share, and 50,000 shares of common stock of no par value. Prior to the adoption of the amendments in 1936, the corporation had issued 8,840 shares of the preferred stock, 125 shares of which were held in the treasury, and 15,000 shares of common.

Under the charter, as amended in 1928, and as it was on February 2, 1930, when appellant acquired his stock, a preferred stockholder had the following rights: (a) To a yearly cumulative dividend of eight per cent payable from surplus or net profits; (b) to the payment of the cumulative dividend before the payment of any dividends on the common stock; (c) in the event of liquidation to have the par value of the preferred stock, plus accrued dividends, paid in full prior to any payment on the common stock; (d) to exchange, at his option, a share of preferred stock for one share of common.

By the amendment of 1936, there was an authorized issue of 128,715 shares of stock divided into three classes— 20,000 shares prior preferred with a par value of $10 per share, 8,715 shares of preferred stock of $10 par value, and 100,000 shares of common with $1 par value. It will be noted that the 8,715 shares of preferred stock equalled the number of shares of the preferred stock issued prior to the adoption of the amendments, less the 125 shares held in the treasury. The prior preferred stock was given priority of payment over the preferred stock except as to cumulative dividends on the preferred stock, to which ref-

erence will be made. Under the amendment, the prior preferred stockholder had the following rights: (a) To cumulative dividends up to but not exceeding $4 per share per annum, payable from net earnings, but whether earned or not, each share to be paid $1; (b) to convert, at the option of the holder, one share of prior preferred stock for one share of common; (c) if the directors elected to redeem the stock, to receive $50 per share, plus unpaid cumulative dividends; (d) in event of liquidation, to be paid $50 per share, plus unpaid cumulative dividends, before anything was paid on the preferred or common stock. Any time prior to December 31, 1936, the preferred stock was, at the option of the holder, convertible into prior preferred stock at the rate of 1.4 shares of prior preferred for one share of preferred. After said date, the exchange was share for share.

Appellant contends that the exercise of the option to exchange his preferred stock for prior preferred was made compulsory. If there was any compulsion to make the exchange, it arises from the impairment of the value of the preferred stock, and not from any express provision in the amendments. It is not questioned that the value of a class of stock might be so decreased by amendments to the articles of incorporation by creating prior rights in other classes of stock, that a holder, to avoid serious loss, would be compelled to exchange his stock for stock in the class holding the priority. The facts are that the rate of cumulative dividend on the two classes of stock would produce the same amount of annual income if the net earnings were sufficient in amount to meet the dividends on both the prior preferred and the preferred stock. If the net earnings were not sufficient to pay the cumulative dividends on both classes of stock, the deficit would fall on the preferred stock, since the prior preferred holds the priority of payment. There is no showing as to the estimated amount of annual income, and in the absence of such proof, it could not be assumed that the corporation would not have sufficient net income

to meet its obligations and pay the annual dividends on both classes of stock. The right to convert the preferred stock into common is taken away by the amendments, except by the rather circuitous route of exchanging the preferred stock for the prior preferred and then exercising the option given prior preferred stockholders to exchange their stock for common stock, share for share. In event of liquidation of the corporation or redemption of the stock, the rights of the preferred stock are the same as the prior preferred, except on redemption, the prior preferred loses the premium payment of $2.50 per share to be paid to the preferred stock.

At the time of the 1936 amendments, there were unpaid accrued dividends of $174,300, which, prorated to the shares of preferred stock then outstanding, nets approximately $20 per share. The amendments of 1936 reduced the par value of preferred stock from $50 per share to $10, and provided that "such change [the change in par value] shall not affect or impair the right of holders of the old preferred stock to receive cumulative dividends accrued thereon prior to the date of such change." The legal effect to be given such provision is that if a holder of preferred stock retained his stock notwithstanding its reduction in par value, he was entitled to the cumulative dividends accrued to the date of the amendment. On the other hand, no cumulative dividends were to be paid on the preferred stock where it was exchanged for the prior preferred except what might be reflected in the giving of 1.4 shares of prior preferred for one share of preferred, if the exchange of stock was made before December 31, 1936.

In so far as the two classes of stock were to be valued as income producing property with reasonable security for payment, the prior preferred would be preferable for the reason that the dividends accumulated on such class of stock were to be paid in full, prior to the payment of any dividends on the preferred stock. The retention of the preferred stock carried the right to the accrued dividends, and

the court cannot, from the facts shown, hold appellant's loss arising from the retention of his old preferred stock would be such that, to avoid serious financial loss, he was compelled to exchange his stock for the prior preferred.

The charter amendments in question were adopted pursuant to the power granted by the Business Corporations act. (Ill. Rev. Stat. 1939, chap. 32, pars. 157.2 *et seq.*) Appellant concedes the provisions of section 52 of the act are broad enough in their terms to authorize the amendment in question, but contends that such authorization permits amendments to corporate charters that are destructive of the vested rights of preferred stockholders, and that, therefore, the statute is unconstitutional. Such contention presents the issue whether or not the rights claimed by appellant were vested.

It is established law that a corporate charter is a contract of a three-fold nature. It forms the basis for a contract between the State and the corporation, the corporation and its stockholders, and the stockholders *inter sese.* (2 Cook on Corporations (5th ed.) sec. 419.) In its varying aspects it is entitled to the same observance as a contract between natural persons. *People* v. *Illinois Central Railroad Co.* 235 Ill. 374; *Illinois Central Railroad Co.* v. *People,* 95 id. 313.

The statutory provisions in force when a charter is granted are as effectively a part of the charter as though they were written into it. (13 Am. Jur. (Corporations) sec. 76.) The rights which appellant claims the charter amendments of 1936 abrogated arose out of the contractual relationship created by his acquisition of the preferred stock in 1930. It is, therefore, necessary to consider the terms of that contract, the conditions and limitations embodied in it, and the character of the rights flowing from it.

The Naylor Pipe Company was organized under the 1919 general Corporations act. (Smith-Hurd Stat. 1931, chap. 32, pars. 1 *et seq.*) Sub-paragraph 4 of section 6

of the act provided that each corporation should, subject to the conditions and limitations prescribed, have the power, rights and privileges "to have a capital stock of such an amount and divided into shares with a par value or without a par value, and to divide such capital stock into such classes with such preferences, rights, values and interests as may be provided in the articles of incorporation or any amendment thereof." Section 59 provided that if the directors desired to amend the articles of incorporation, notice of such desire should be given the stockholders at either an annual or special meeting, and that the particular matters subject to amendment included the changing of the "number, par value or character, class or preference of the shares of the capital stock, or the purpose for which such corporation was formed, or by increasing or decreasing the capital stock or by changing the shares from par value to no par value, or from no par value to par value, or any combination thereof."

It is obvious that said sub-paragraph 4 of section 6, and section 59, expressly authorized the amendment of articles of incorporation in the particular in which the articles of incorporation of the appellee company were amended in 1936. Appellant relies upon section 61 of the former Corporations act as prescribing a limitation upon the power of a corporation to amend its charter. That section is directed at the power of amendment where stock carrying a preference is involved, and restricts the power of amendment to the charter provisions. From this, appellant argues that his rights as a preferred stockholder are to be determined from the charter provisions, and, in some instances, he makes claim for a right created under the original charter, but which was changed by the amendment of 1928. Article 10, as amended, a part of the pertinent provisions of which have been set out above, became a part of the charter provisions of the pipe company the same as though it had been inserted therein in the first instance. Article 10, as amended, provided "the corporation shall not at any

time create any stock having rights or preferences superior to the aforesaid preferred stock [class of stock of which appellant's was a part] or the common stock, without the affirmative vote of the holders of at least two-thirds of the preferred stock then outstanding." When appellant accepted his stock, his contract with the corporation as a preferred stockholder included said provision as a part of its terms. It was stated on the face of the stock certificate that by accepting the same, he expressly assented to and was bound by all the terms, conditions, and limitations of the corporation's certificate of incorporation and all amendments thereto.

In construing section 61 in the light of the 1936 amendment, the restriction limiting the power of amendment, where preferred stock is involved, to the provisions of the charter, necessarily means it shall be limited to the provisions of the charter as amended when appellant acquired his stock. To adopt the construction contended for by appellant and require the power of amendment to be exercised in accord with the original charter provisions would permit appellant to ignore the amendments and change the terms of the contract under which he accepted his stock. This may not be done.

By section 146 of the 1919 act, the legislature expressly reserved the right to amend, repeal or modify the Corporations act at pleasure. This reservation of power to amend or repeal gave the legislature the right to change the law and thereby change the contract then existing between the State and the corporation. It is conceded that such power cannot be exercised to abrogate rights that have become vested. In 1933, the Business Corporations act was adopted and the 1919 act thereby repealed. Section 163 of the 1933 act provided that the repeal of the former act should not affect "any right accrued or established or any liability * * * incurred under the provisions of such law prior to the repeal thereof." Appellant contends this section preserves to him all the rights he enjoyed as a preferred stock-

holder prior to the adoption of the 1933 amendment. Such contention ignores the conditional character of the contract under which appellant held his stock.

The corporation had the statutory power under the 1919 act to amend its articles of incorporation in the manner it did, and by appellant's acceptance of the stock, he agreed to be bound by "all the terms, conditions, and limitations of the corporation's certificate of incorporation, and all amendments thereto." This view is sustained by *Johnson* v. *Lamprecht,* 133 Ohio St. 567, 15 N. E. (2d) 127.

In *McCracken* v. *Hayward,* 2 How. (U. S.) 608, 11 L. ed. 397, it was said: "The obligation of a contract consists in its binding force upon the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts and form a part of them as a measure of the obligation to perform them by the one party, and the right of enforcement acquired by the other."

In determining whether appellant's rights as a preferred stockholder were vested and within the protection of the constitutional clause, the distinction has been made between those rights which arise from an exercise of the option to exchange preferred stock for prior preferred, and those rights attached to the stock where the option to exchange has not been exercised. Since we have held the election to exchange was not compulsory, the inquiry is narrowed to the latter class of rights. Under the views expressed, appellant did not have any vested rights that were impaired by the amendments. For the reason stated, section 52 of the Business Corporations act is held to be constitutional, as applied to the facts in this case.

The decree of the superior court of Cook county, dismissing the complaint for want of equity, was correct, and is affirmed.

*Decree affirmed.*

STONE and SHAW, JJ., dissenting.