(Nos. 30852, 30853.—

THE WESTERN FOUNDRY COMPANY, Appellant, *vs.* ALBERT G. WICKER, JR., Appellee.

*Opinion filed March 24, 1949—Rehearing denied May 11, 1949.*

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, (FLOYD E. THOMPSON, JAMES A. SPROWL, and CHARLES J. O'LAUGHLIN, of counsel,) all of Chicago, for appellant.

KINNE & SCOVEL, (HARRY C. KINNE, SR., and HARRY C. KINNE, JR., of counsel,) all of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

On April 30, 1946, the plaintiff, Western Foundry Company, a corporation, brought an action in the circuit court of Cook County against the defendant, Albert J. Wicker, Jr., a shareholder of the corporation owning both preferred and common shares, for a declaratory judgment that an amendment to the articles of incorporation, adopted December 12, 1941, and, in part, cancelling all accumulated dividends on preferred shares, was legal and valid and binding on defendant as a nonassenting shareholder. With his answer to the complaint, defendant filed a counterclaim for the arrearage of unpaid accumulated dividends on his preferred shares as of December 12, 1941, and for payment of all dividends declared on both classes

of shares after the date of the amendment. By its answer to the counterclaim, plaintiff re-tendered payment of all dividends declared subsequent to December 12, 1941, which defendant had consistently refused to accept. Answers were filed by the respective parties and, on plaintiff's motion for a summary judgment, the cause was heard on the pleadings and on affidavits submitted in connection with the motion. The circuit court entered a single decree sustaining the validity of the amendment and denying the relief sought by the counterclaim except as to dividends declared after the adoption of the amendment. Defendant prosecuted an appeal to the Appellate Court for the First District from every part of the decree. The Appellate Court held (1) that the amendment was void and ineffective to the extent it purported to cancel the accumulated unpaid dividends on the defendant's preferred shares; (2) that, the counterclaim being an action at law for the payment of undeclared dividends instead of an equitable action for the declaration of dividends, defendant was not entitled to recover accumulated preferred dividends in this proceeding; and (3) that, in view of the inconsistency of defendant's demands for dividends accruing before the amendment and for dividends thereafter declared, the ends of justice required that plaintiff be afforded an additional opportunity to interpose objections to defendant's claim for dividends declared after December 12, 1941. Accordingly, the decree of the circuit court was reversed, and the cause was remanded for further proceedings in connection with the second part of the counterclaim. (*Western Foundry Co.* v. *Wicker,* 335 Ill. App. 107.) We have granted the separate petitions of the plaintiff and the defendant for leave to appeal. For the purposes of a hearing and opinion, the causes have since been consolidated.

There is no dispute as to the facts. As disclosed by the pleadings, the Western Foundry Company was incorporated in Illinois, in 1925, and is engaged in the manu-

facture of iron and steel castings with its principal office at Chicago. Defendant, a resident of El Paso, Texas, was one of the twenty-one original shareholders in the present corporation. Plaintiff corporation came into existence following the reorganization of a predecessor corporation of similar name, organized under the laws of Illinois in 1892, and having but one class of stock. The Western Foundry Company was capitalized at $1,200,000, its authorized stock consisting of 6000 preferred shares of the par value of $100 a share and 60,000 common shares of the par value of $10 a share. It acquired its assets from the former corporation in exchange for stock, defendant receiving 80 shares of preferred and 800 shares of common stock for his interest in the old company.

At the time of incorporation in 1925, and at all times prior to the adoption of the amendment in question, the articles of incorporation provided that the holders of the preferred stock shall be entitled to receive, when and as declared by the board of directors out of net profits or surplus of the corporation, dividends at the rate of seven per cent per annum, and no more, payable in equal quarterly instalments. In addition, the preferred shares enjoy certain preferences as to the distribution of assets in the event of voluntary liquidation or dissolution and, upon merger or consolidation, dissenting preferred shareholders are entitled to $105 per share, plus all unpaid accumulated dividends to the date of payment. On the other hand, the preferred stock is subject to redemption at the election of the board of directors and the charter further provides that the rights and preferences of the preferred stock may be changed by the written consent or affirmative vote of the holders of two thirds of the preferred shares outstanding at the time.

Although dividends on the common stock ceased in 1929, the corporation continued to pay regular quarterly dividends on the preferred stock down to July, 1931.

Thereafter, no dividends were declared until December, 1941. Surplus accounts aggregating almost $350,000 at the end of 1930 were swallowed up by heavy operating and other losses incurred during the next five years and a large net deficit resulted. Commencing in 1936, the company experienced a gradual and modest recovery, with earnings from operations ranging from $14,480.51 in 1936 to $20,262.60 in 1940. On December 31, 1940, the net deficit amounted to $267,805.51. By June 30, 1941, this figure was reduced to $204,893.01, and at the end of the next quarter the deficit was down to $143,482.77.

Somewhat earlier, in November, 1938, a special share-holders' meeting had been called for the purpose of voting on a plan to eliminate the deficit by reducing the par value of the corporation's stock, thus permitting the resumption of at least partial dividends on the preferred stock. There was no substantial agreement among the shareholders, however, and it was voted to drop the matter for the time being. Thus matters rested for three years and, in the meantime, the arrearage of accumulated dividends on the preferred stock rose to $71.75 per share. In November, 1941, the directors again took up the subject of recapitalizing the corporation. With the recent sharp increase in earnings, assets in excess of $1,150,000, and no mortgage or other fixed indebtedness, the company was in sound financial condition except for the deficit and the accumuation of preferred dividends. Accordingly, the directors concluded that the best plan and the one most likely to succeed would be to amend the articles of incorporation in the following respects: (1) reduce the par value of the common stock from $10 to $5 a share; (2) make the preferred stock noncumulative as to future dividends; (3) cancel all unpaid accumulated dividends on the preferred stock up to December 31, 1941, and pay a special dividend of $2 a share to the holders of preferred stock in December,

1941. Before calling a shareholders' meeting, a letter describing the plan and enclosing the text of the proposed amendment was sent to all the preferred shareholders for comment in order to determine whether the plan was feasible.

By December 1, 1941, every shareholder, except defendant, had indicated his approval of the amendment and all but four had done so in writing. In consequence of this response, the directors called a special shareholders' meeting for December 12, 1941. Thirteen shareholders appeared in person and thirty-two others sent proxies. Altogether, ninety-seven per cent of both classes of shares was represented. At the time of the meeting, Wicker owned 100 shares of the corporation's preferred stock and 778 shares of common stock. He did not attend the meeting and failed to submit a proxy to vote against the resolution, even though specifically invited to do so. Notwithstanding, a letter from defendant to the secretary of the corporation expressing opposition to the proposed recapitalization was reported to the meeting during the discussion preceding the vote. Tallied by classes of shares, of the 5,470 shares of preferred stock outstanding, 5,298 were recorded in favor of the resolution and none against it. In like manner, with 56,604 shares of common stock outstanding, all 55,182 shares represented at the meeting were voted in favor of the resolution. Shortly thereafter, the amended articles of incorporation adopted by the resolution were filed with the Secretary of State. As a result of the amendment, the stated capital was reduced to $865,070, both the deficit and accumulation of accrued preferred dividends were eliminated, and a paid-in surplus of $144,537.23 was created.

Toward the end of December, 1941, the corporation paid the special dividend on the preferred stock provided for in the amendment. Full quarterly dividends on the preferred stock were resumed as early as January 2, 1942,

and have been paid regularly since this date. In addition, dividends were declared and paid on the common stock at the end of 1942, 1943, and 1944, and in January, 1947. All shareholders of the corporation, except defendant, accepted their dividend payments. Each dividend declared after December 12, 1941, was tendered to defendant and refused by him. Although frequently denying the validity and legal effectiveness of the recapitalization, defendant took no action against the corporation. Several times the corporation requested him to bring an action against it to determine the validity of the amendment but defendant merely continued to return his dividend checks and write occasional letters of objection. After the adoption of the Declaratory Judgment Act in 1945, (Ill. Rev. Stat. 1947, chap. 110, par. 181.1), the corporation initiated legal proceedings against its nonassenting shareholder, a resident of Texas, in the courts of this State. As related, the present action was commenced in April, 1946, and defendant, asserting his claimed rights, filed a counterclaim for dividends.

The principal question presented for determination by this appeal is the validity of the amendment to the articles of incorporation adopted December 12, 1941. As a preliminary matter, however, it should be observed that while the articles of incorporation were amended in three respects, defendant restricts his attack to only one part of the amendment and makes no assertion that the allegedly invalid provisions contaminate the entire amendment and render it wholly void. Although also a common shareholder, defendant has not interposed any objections to the reduction in the par value of the common stock and he expressly concedes that the amendment was effective to make future dividends on the preferred stock noncumulative. Defendant's objections relate exclusively to the cancellation of unpaid accumulated preferred dividends. In asserting a claimed right to the payment of unpaid accrued dividends, defendant stands alone, all the other shareholders

of the corporation having long since waived whatever rights they may have possessed by voting for the amendment in question and by accepting numerous dividends declared and paid by the corporation in reliance upon the validity of the recapitalization and the elimination of accumulated preferred dividends.

The precise question of the direct and outright cancellation of unpaid accumulated preferred dividends has not heretofore been presented to this court for our consideration. Decisions in other jurisdictions on this and related methods of eliminating accumulations of dividends have, however, established a considerable body of law on the subject. Nevertheless, an examination of the authorities reveals that only fundamental principles of corporation and contract law are involved and, further, that each case is largely governed by its own peculiar facts.

That a corporate charter is a contract has long been settled. Spoken of as a contract having a threefold nature, it operates to create rights and duties between the State and the corporation, between the corporation and its shareholders, and among the shareholders themselves. (*Kreicker* v. *Naylor Pipe Co.* 374 Ill. 364; *Morris* v. *American Public Utilities Co.* 14 Del. Ch. 136.) As far as contractual relationships are concerned, the challenged provisions of the amendment in question affected both the existing rights of the shareholders against the corporation and the existing rights of the shareholders among themselves. The destruction of accumulated preferred dividends necessarily alters the obligations of the corporation to its preferred shareholders and, at the same time, confers a benefit on the common shareholders by permitting a resumption of dividends on their stock at an earlier date than otherwise would be possible. Since the preferences of the preferred stock and the rights of the preferred shareholders among themselves are entirely matters of contract, the issues made by the pleadings must be regarded as calling for the con-

struction of the contract sought to be altered by the amendment, particularly as to whether the terms of the contract permit the change effected by the amendment. The terms of this contract are embodied in the charter of the corporation and in the appropriate provisions of the corporation statute in force at the time the articles of incorporation were adopted. *Kreicker* v. *Naylor Pipe Co.* 374 Ill. 364; *Tennant* v. *Epstein,* 356 Ill. 26.

In this connection, it will be helpful to set forth a summary of plaintiff's argument in support of the validity of the disputed provisions of the amendment. Plaintiff contends (1) that a charter is a contract among the shareholders themselves; (2) that defendant acquired his preferred shares subject to the terms and conditions of the articles of incorporation; (3) that the articles of incorporation have at all times authorized the holders of two thirds of the preferred stock to alter or change the "rights and preferences" of the preferred stock; (4) that one of the rights so subject to change or alteration is the right to unpaid accumulated dividends, and (5) that the charter provision governing changes in the rights of the preferred stock was permissible under the General Corporation Act of 1919, as in force in 1925. The General Corporation Act has been repealed and replaced by the Business Corporation Act of 1933. Although section 52 of the new act, in force when the amendment was adopted, provides that a corporation may amend its article of incorporation "(g) * * * to change the preferences, qualifications, limitations, restrictions, and the special or relative rights in respect of all or any part of its shares," (Ill. Rev. Stat. 1941, chap. 32, par. 157.52,) and no such explicit language is found in the earlier statute, plaintiff makes no question of the application of the Business Corporation Act to the amendment at hand. Thus, questions as to the construction of section 52(g) and its operation as to corporations organized prior to 1933 are not before this court at the

present time. Plaintiff is content to rely upon the General Corporation Act of 1919 and, yet, even here no assertion is made that the statute itself contains a direct grant of power to cancel unpaid accumulated dividends. In short, plaintiff contends that its own articles of incorporation furnish the authority to accomplish the amendment in question. ˳ Defendant, on the other hand, asserts that neither the General Corporation Act nor the articles of incorporation sanction an amendment cancelling accrued preferred dividends and, further, contends that his right to the arrearage of dividends is a vested and inviolable contract right not subject to cancellation or impairment without his consent. Whether defendant, by accepting stock in the corporation, assented, in advance, to the power of the corporation to amend its articles of incorporation in the respect noted, is the decisive issue presented for decision.

As to the statutory aspects of the contract between the corporation and its shareholders and among the shareholders themselves, it can hardly be said that the parties have joined issue in their briefs. Much of defendant's argument is devoted to the Business Corporation Act. The remainder is an assertion that section 61 of the General Corporation Act of 1919 is controlling in the present instance. Section 61 provided as follows: "No change in the character or class, or increase or decrease in the amount of authorized capital stock entitled to any preference over any other stock shall be made contrary to the charter provisions creating such preferred stock." (Ill. Rev. Stat. 1925, chap. 32, par. 61.) Defendant concludes that the statute expressly prohibited plaintiff from cancelling unpaid dividends because the change was "contrary to the charter provisions creating such stock." Manifestly, the argument assumes the point in controversy as to the meaning and effect to be given to the pertinent provisions of the articles of incorporation. In regard to the statute, plaintiff simply contends that it authorized the inclusion of the disputed

articles in the charter. In point of fact, section 61, although in form a limitation of power, presupposes the power of corporations to make special provisions for changes in their charters. Other sections are more informative. For example, section 4, after enumerating prescribed matters which must be included in the charter, provided that a corporation could include in its articles "Any other provisions, not inconsistent with law * * * creating, defining, limiting and regulating the powers of * * * the stockholders or any class or classes of stockholders." (Ill. Rev. Stat. 1925, chap. 32, par. 4(13).) Again, by subsection 4 of section 6, the statute ordained that a corporation had the power "To have a capital stock * * * and to divide such capital into such classes, with such preferences, rights, values and interests as may be provided in the articles of incorporation." (Ill. Rev. Stat. 1925, chap. 32, par. 6(4).) These sections are sufficient to sustain the inclusion of a charter provision permitting an amendment creating an issue of prior preferred stock having rights superior to existing preferred stock. (*Kreicker v. Naylor Pipe Co.* 374 Ill. 364.) If, indeed, any statutory authority is necessary for a charter provision allowing a subsequent amendment affecting the cancellation of unpaid accumulated dividends, it is clear that the several provisions quoted suffice to confer this power upon the corporation and its shareholders.

The effect of the applicable provisions of the charter remains to be determined. One of the conditions on which defendant, as a preferred shareholder, enjoyed his right or preference to seven per cent cumulative dividends was that, "Subject to the limitations hereinabove set forth, the authorized capital stock of the corporation may be changed, *the rights and preferences of the preferred stock may be changed* and different classes of preferred stock may be created * * *." (Emphasis supplied.) The limitations on the power to alter the rights of the preferred stock are

stated in the next preceding paragraph of the articles of incorporation, where it is provided that, "So long as any of the preferred stock of the corporation is outstanding the corporation shall not, without the consent of the holders of at least two-thirds (⅔) in amount of the preferred stock of the corporation at the time outstanding, expressed either in writing or by their affirmative vote at a meeting called for that purpose, (1) alter or change the preferences hereby given to the preferred stock, or any of the provisions contained in respect of the preferred stock * * *." Read together, the two paragraphs establish, as a condition of acceptance of stock in the corporation, that the holders of two thirds of the preferred stock may alter or change the rights, preferences and provisions of the preferred stock. It is upon this sweeping grant of power that plaintiff relied in adopting the amendment cancelling unpaid accumulated dividends. To determine whether the right to eliminate accrued dividends was within the contemplation of these provisions of the charter, recourse may be had to decisions in other jurisdictions. Since this is a matter of construction of contracts, reports of other cases are helpful only to the extent that they involve charter or statutory provisions similar in language to the charter here under examination. Cases meeting this qualification are comparatively few in number and for the most part arose in England.

*In re Oban and Aultmore-Glenlivet Distilleries, Ltd.* 5 Court of Sessions Cases, 1140, is analogous. There, the corporation had two classes of shares and, prior to recapitalization, the cumulative preferred dividends were three years in arrears. As part of the plan of recapitalization, the par value of both the common and preferred shares was reduced and the cumulative dividends in arrears were cancelled. Article 46 of the charter provided as follows: "All or any of the rights and privileges attached to any class of shares may be modified by an extraordinary

resolution * * * [provided] that members holding or representing by proxy two-thirds of the nominal amount of the issued shares of the class shall be present at such meeting." In approving the amendment, the court said, "This case is certainly a very special one, and unusually large powers are conferred by article 46 of the articles of association. That article, reasonably construed, seems to put it in the power of the majority to make the modification of the memorandum which is here proposed."

To the same effect is *In re Welsbach Incandescent Gas Light Co. Ltd.* 1904 L.R. 1 Ch. Div. 87. There, clause 52 of the articles of association provided "Whilst the capital is divided into different classes of shares, all or any of the rights and privileges attached to each class may be modified by agreement between the company and any person purporting to contract on behalf of that class, provided that such agreement (1) is ratified in writing by the holders of at least two-thirds of the issued shares of that class, or (2) is ratified by an extraordinary resolution passed at a separate general meeting of the holders of the shares of that class * * *." Although all three classes of shares issued by the corporation provided for fixed cumulative dividends, the preference shares outranked the other two classes. A holder of preference shares objected to a recapitalization which, among other things, extinguished all arrearages of undeclared dividends. The lower court held that the plan was in accord with article 52 of the charter and, upon appeal, the validity of the amendment was sustained.

The third English case, *Last v. Butler & Co.* 36 Times L.R. 35, arose on a motion for an interlocutory injunction to restrain the holding of a shareholders' meeting for the purpose of voting on a resolution cancelling accrued cumulative dividends on the preference shares and making future dividends noncumulative. The court refused to grant the

injunction and, in speaking of the powers of the corporation, said, "The articles expressly provided that, with the sanction of an extraordinary resolution of the shareholders of any class, all or any of the special rights and privileges attached to any class of shares might be modified, abrogated, and altered."

To combat the effect of these three cases, defendant cites numerous American authorities in support of his contrary contention that the authority to change the "rights and preferences" of preferred stock does not include the power to cancel a preferred shareholder's right to accumulated dividends in arrears. None of the cases relied upon by defendant involves a charter provision resembling the one here under consideration, and only one, *Keller* v. *Wilson & Co.* 21 Del. Ch. 391, contains a statutory provision permitting the adoption of a charter amendment altering the "rights" of preferred stock. A review of *Morris* v. *American Public Utilities Co.* 14 Del. Ch. 136, is necessary to a proper understanding of the *Keller case*. In the *Morris case,* the corporation involved had two classes of stock, preferred and common. The preferred stock was entitled to fixed cumulative dividends and the dividends were in arrears. By an amendment to the articles of incorporation, the existing preferred stock was made junior to two new classes of preferred shares, the cumulative dividends in arrears were cancelled, the redemption price of the preferred was reduced and its voting privilege destroyed. In 1923, when the *Morris case* arose, section 26 of the Delaware General Corporation Act, permitting the amendment of charters, in effect, authorized any amendment which "would alter or change the preferences given to any one or more classes of preferred stock." (Laws of Delaware, 1915, chap. 113, sec. 12.) All provisions of the amendment were challenged and all were sustained, except the cancellation of accrued preferred dividends. The court

held that the cancellation of accumulated dividends was more than a change of a preference, that it was the destruction of a vested property right and, hence, was not within the contemplation of the statute providing for changes in preferences only.

In 1927, section 26 of the Delaware Corporation Act was amended to authorize charter amendments "by changing the number, par value, designations, preferences or relative, participating, optional, or other special rights of the shares." (Laws of Delaware, 1927, chap. 85, sec. 10.) *Keller* v. *Wilson & Co.* 21 Del. Ch. 391, was decided in 1936. There, a corporation, organized in 1925, had, in 1926, issued two classes of preferred stock and a common stock. As part of a plan of recapitalization adopted in 1935, the arrearages of dividends on both classes of preferred stock were cancelled. As a result of the decision in the *Morris case,* the Supreme Court of Delaware was required to determine the effect of the 1927 amendment to section 26 on the contract of the preferred shareholders as it stood when their stock was issued in 1926. The court held that the change in the corporation act could not affect the right of the preferred shareholders to accumulated dividends without impairing the obligation of contract. Not content with resting the decision on this point, however, the court went on to adopt, from the *Morris case,* the characterization of the right to accrued cumulative dividends as a vested property right, and held that section 26, although conferring the power to change the "preferences" and "special rights" of shares, did not include the authority to cancel accrued dividends in arrears.

In *Consolidated Film Industries, Inc.* v. *Johnson,* 22 Del. Ch. 410, decided one year later, the court adhered to its opinion in the *Keller case.* Although presenting substantially the same issues as the *Keller case, Consolidated Film Industries, Inc.* v. *Johnson,* is, in fact, a stronger

holding because the corporation there was not organized until after the 1927 amendment to the corporation act and, thus, the decision is based exclusively on the construction and interpretation of section 26, as amended.

Except for *Morris* v. *American Public Utilities Co.* 14 Del. Ch. 136; *Harr* v. *Pioneer Mechanical Corp.* 65 Fed. 2d 332, and *Federal United Corp.* v. *Havender,* 24 Del. Ch. 318, the *Keller case* and the *Consolidated Film Industries case* might be considered acceptable authority for the proposition that the authority to change the "rights" of preferred stock does not include the right to cancel cumulative dividends in arrears. For example, in the *Morris case,* previously discussed, and relied upon so heavily in the *Keller case,* the court, in discussing the nature of the right to accumulated dividends as a vested property right, said as follows:

"If the foregoing views are sound, then it follows that the amendment in question disturbs the rights of the complainants, not in the enjoyment of a preference, but rather in the enjoyment of a vested right. It takes from an objecting stockholder that which in a real sense is his individual property interest. If the articles of incorporation so provide, I know of nothing in the law which would forbid the members of a corporation to give to a majority of a class of stockholders the right to cancel obligations which the entire class might hold against the corporation, even though some of the class might refuse their assent to such procedure. If such a power is agreed upon, then its exercise would be no more than the assertion of a stipulated right. Such appears to have been the situation in the following English cases cited by the defendant and confidently relied upon by it: *Oban and Aultmore Glenlivet Distilleries; Ltd:,* 5 Court of Sessions Cases 1140 (1903); *Welsbach Incandescent Light Co., Ltd.,* (1904) 1 Ch. 87; and *Last et al.,* v. *Buller & Co. Ltd., et al.,* (1919) Ch.

Div. 36, Times L. Rep. 35. * * * In these three English cases, it therefore, appears there was a stipulation that 'rights and privileges' could be modified.

"There is, of course, no such phraseology in the articles of incorporation in the instant case, and such phraseology is very much broader than is the language contained in Section 26 of our General Corporation Act * * *. Our section 26 provides only that preferences may be altered or changed. It contains no reference to 'rights and privileges.' Thus the English cases are distinguishable from the instant one."

It is thus apparent that, although describing the right of a preferred shareholder to the ultimate payment of dividends in arrears as a vested property right, the court did not conceive of this right as being so peculiar and different from the other rights of preferred shareholders that unpaid accumulated dividends could never be cancelled. In fact, it was expressly recognized that, in a proper case, a charter provision permitting a change of the "rights" of preferred stock would be sufficient authority for an amendment such as that effected in the case at bar.

By its decision in *Harr* v. *Pioneer Mechanical Corp.* 65 Fed. 2d 332, in 1933, the Circuit Court of Appeals for the Second Circuit became the first court to construe the 1927 amendment to section 26 of the Delaware Corporation Act in so far as it affects the cancellation of unpaid accumulated dividends. The majority of the court held unequivocally that section 26, as amended, invested the majority of the shareholders, voting by classes, with the authority to cancel unpaid accumulated dividends. Although bound by the decision in the *Morris case,* the court intimated that the right to undeclared dividends which have accrued by the mere lapse of time is nothing more than a preference. Learned Hand, C.J., dissenting from the majority on a technical matter of construction, was more explicit, and said, "Personally I should not have thought

that the cumulative dividends conferred any 'vested' rights, whatever that much abused word may mean. They seem to me to be no more than a right to an increased dividend when any is declared, or at least when there are earnings. But like my brothers I yield on that to the Delaware courts, which have considered them as creating present rights."

*Federal United Corp.* v. *Havender,* 24 Del. Ch. 318, was decided by the Supreme Court of Delaware in 1940. There, accrued preferred dividends in arrears were eliminated by the process of merging the parent corporation with a wholly-owned subsidiary. The court held that the merger was authorized by the corporation act and that it was binding on the preferred shareholders. In connection with the right to accrued dividends, the court said, in part, "Looking to the law which is a part of the corporate charter, and, therefore, a part of the shareholder's contract, he has not been deceived nor lulled into the belief that the right to such dividends is firm and stable. On the contrary, his contract has informed him that the right is defeasible; and with that knowledge the stock was acquired." Thus, what was formerly regarded as an almost inviolable vested property right was now considered a mere defeasible right, subject to cancellation by merger by reason of the consent of the preferred shareholders granted at the time the stock was originally issued. There being little or no difference between a recapitalization by corporate amendment and recapitalization by merger of a parent corporation with a wholly-owned subsidiary, the present status of the *Keller case* is obscure. While not expressly overruled, the theory of the *Keller case* was entirely repudiated. Consequently, as an authority for the proposition that the power to change the "rights" of preferred stock does not include the right to cancel unpaid cumulative dividends, *Keller* v. *Wilson & Co.* is highly questionable. See: *Hottenstein* v. *York Ice Machinery Corp.* 136 Fed. 2d 944.

The Delaware cases have been dealt with at length because they are the only American decisions involving the specific power to change the "rights and preferences" of the preferred stock which have been directed to our attention. Additional cases cited by defendant may be treated in less detail. In *Patterson* v. *Durham Hosiery Mills*, 214 N. C. 806, the court, upon an examination of the charter and the applicable corporation statute, held that the cancellation of accrued preferred dividends by the proposed amendment to the charter was not within the contemplation of the parties at the time the contractual relation was created. The charter merely granted the authority to increase the amount of preferred stock and the right to create a new issue of prior preferred stock. As to the statute involved, the only applicable provision was a vague grant of power "to make any other desired amendment." Gen. Stat. of N. C., 1943, chap. 59, par. 31(7). Again, the right to undeclared accrued dividends was described as a vested property right, and a right in the nature of a debt.

In *Wessel* v. *Guantanamo Sugar Co.* 134 N. J. Eq. 271, the corporation had both preferred and common stock and, at the date of the amendment to the articles of incorporation, the arrearage of dividends on the preferred stock amounted to $112 a share. By the amendment, both the preferred stock and the existing common stock were cancelled and a new common stock was issued in exchange. Although the applicable statute granted the power to change preferred stock into one or more classes of common stock, (Laws of New Jersey, 1921, chap. 223,) the court held that this power did not carry with it the right to destroy accrued cumulative dividends. The court also found that the recapitalization was unfair to the preferred shareholders. Because of unnecessary reserves and over-depreciation of fixed assets, the court found that, instead of a deficit of $457,783, the corporation had a large surplus out of which dividends could have been paid to the preferred share-

holders. The opinion discloses that the decision was based in large measure on the inequitable nature of the recapitalization. This was in line with the traditional policy of the New Jersey courts in protecting the rights of preferred shareholders to accrued dividends where an actual surplus existed, as evidenced by the following merger cases: *Windhurst* v. *Central Leather Co.* 105 N. J. Eq. 621; *Lonsdale Securities Corp.* v. *International Mercantile Marine Corp.* 101 N. J. Eq. 554; *Colgate* v. *United States Leather Co.* 73 N. J. Eq. 72.

If the determinative test found in the New Jersey decisions is applied to the amendment here in question, its validity must be sustained. That the plan was fair and equitable as concerns the interests of the preferred shareholders is demonstrated by the fact that it received the affirmative vote of the holders of ninety-seven per cent of the preferred stock. Of more significance, perhaps, is the fact that at the date of the amendment, there was no earned or paid-in surplus out of which dividends on the preferred stock could have been paid. In addition, while the preferred shareholders gave up their rights to accrued dividends, it should also be recognized that the common shareholders sacrificed fifty per cent of the par value of their shares. Even if the plan resulted in unfair advantages to the common shareholders, defendant could not complain because, owning both preferred and common shares in approximately the same ratio as the aggregate of preferred stock bears to the total common stock outstanding, whatever he lost as a preferred shareholder, he would gain as a common shareholder.

Lastly, there are the New York decisions, the earliest being *Roberts* v. *Roberts-Wicks Co.* 184 N. Y. 275. There, the corporation had both preferred and common stock, the preferred stock being entitled to a six per cent cumulative dividend and to interest on accrued dividends from the date of nonpayment. A one-third reduction in the capitali-

zation of the corporation was effected by the simple expedient of cancelling one third of the shares held by each shareholder of the corporation. The charter amendment did not purport to cancel accrued dividends and, following the payment of all accumulated dividends on the preferred stock, as reduced by the amendment, the question arose as to whether the corporation was also obliged to pay the accrued dividends on the cancelled preferred stock before it could properly declare a dividend on the common stock. The court held that the accrued dividends on the cancelled preferred stock survived the amendment and continued to be an obligation of the corporation to the preferred shareholders. The right to accrued preferred dividends was said to be a vested right and was otherwise described as a debt or indebtedness. Since neither the corporation act, the charter nor the amendment were comparable to their counterparts in the case at bar, *Roberts* v. *Roberts-Wicks Co.* is not applicable here.

In *Davidson* v. *Parke, Austin & Lipscomb, Inc.* 285 N. Y. 500, the corporation had one class of preferred stock and one class of common stock. After unpaid dividends had accumulated on the preferred stock, an amendment was adopted converting both existing classes of stock into a single, new common stock. In addition to the cancellation of accrued dividends, the amendment also resulted in the termination of a sinking fund for the redemption of the preferred stock. No question was made that the plan of recapitalization was authorized by the terms of the charter. In substance, the applicable statute permitted changes in respect to shares and capital stock, including a change of any previously authorized shares into a different number of shares of the same class or any other class, and a classification or reclassification of any class of shares. In a subsequent section of the statute prescribing the procedures to effectuate an amendment, it was provided that,

where the certificate "alters the preferential rights of any outstanding shares," a nonassenting shareholder is entitled to an appraisal of his shares. Since there was no clear grant of the power to change the "preferential rights" of shares and because the words "preferential rights" did not appear in the section conferring the power to amend but, rather, were employed in a procedural section of the statute the court held that the legislature did not intend to permit an amendment altering the rights of preferred shareholders as to unpaid accumulated dividends. Of equal importance with the ultimate decision in the case is the fact that the court abandoned the vested-rights test. In language particularly apt, the court said: "So it seems that only confusion results from saying that 'vested rights' are not within the contemplation of the statute. All preferential rights of stockholders are in a sense vested. They are all property rights founded upon contract. The right of priority in the distribution of corporate assets on dissolution is no less vested than the right to be paid dividends for past years out of contingent future profits. The inadequacy of the 'vested rights' test is further demonstrated by the fact that new stock may be issued with preferential rights to the assets of the corporation upon dissolution and to dividends superior to the preferential rights of the then outstanding shares, [Citation] even superior to the right of preferred stockholders to dividends in arrears. [Citation] In these situations the dissenting stockholder is not even entitled to an appraisal of his shares under section 38 and section 21. [Citation] The judicial problem is not whether a particular preferential right is vested or not, but rather what was the legislative intent as to it."

The foregoing cases are representative of the reported decisions dealing with the problem of the cancellation of unpaid accumulated dividends by charter amendment. In

the light of these authorities, a fair statement of the general rule is that where the articles of incorporation, or the pertinent provisions of the applicable corporation act, provide that a prescribed majority of the shareholders, voting by classes, as necessary, shall have the power to alter or change the "rights and preferences" of the preferred stock, this power extends to and includes the right to cancel accrued undeclared preferred dividends. Accordingly, we hold that defendant acquired his shares of the preferred stock of the plaintiff corporation subject to a contractual condition investing a two-thirds majority of the preferred shareholders with the right to adopt a charter amendment eliminating unpaid accrued dividends on the preferred stock. This was defendant's contract with the corporation and with the other shareholders and he is bound by it. Our construction of the language of the charter is fully supported by *In re Oban and Aultmore-Glenlivet Distilleries, Ltd.* 5 Court of Sessions Cases, 1140, by *In re Welsbach Incandescent Gas Light Co., Ltd.* 1904 L. R. 1 Ch. Div. 87, and by *Last* v. *Butler & Co.* 36 Times L. R. 35, all involving charter provisions almost identical to the one here under consideration, and by *Harr* v. *Pioneer Mechanical Corp.* 65 Fed. 2d 332, wherein the Circuit Court of Appeals for the Second Circuit construed the 1927 amendment to section 26 of the Delaware General Corporation Act, and by *dicta* in *Morris* v. *American Public Utilities Co.* 14 Del. Ch. 136, where a distinction was drawn between "rights" and "preferences" of preferred stock.

We are further satisfied that the right of a preferred shareholder to receive unpaid accumulated dividends, regardless of how characterized, is no different from the many other rights possessed by preferred shareholders. Notwithstanding its frequent description as a "vested right," or "a vested property right" or "right in the nature of a debt," in the final analysis it is nothing more than a simple

contract right. The same contract creating the right to accrued cumulative dividends may, by other terms and conditions, render the right defeasible by appropriate action of the majority of the members of the corporation. Furthermore, although an amendment cancelling accrued dividends appears to have a retroactive effect, its actual operation is prospective only. The accrual of dividends by the mere lapse of time does not alter the nature or character of the dividend rights of preferred stock. Where a corporation fails to declare a dividend on its preferred stock, the only change effected is an enlargement of the size or quantity of the right to dividends. The character of the right remains unchanged and continues to be prospective. Lastly, it should be observed that the charter provision authorizing a change in the rights of the preferred stock itself creates a contractual right in the shareholders and it is the validity of a proper exercise of this right to change the defeasible right of the preferred stock which is here sustained.

The amendment of December 12, 1941, being legal and valid and binding on defendant, it follows that he is not entitled to the unpaid accumulated dividends accruing on his preferred stock prior to the date of the amendment, but he may recover all dividends subsequently declared.

As to plaintiff's action for a declaratory judgment and defendant's counterclaim for dividends declared after December 12, 1941, the judgment of the Appellate Court is reversed; as to the counterclaim for undeclared accumulated preferred dividends, the judgment of the Appellate Court is affirmed, and the decree of the circuit court of Cook County is, in all respects, affirmed.

*Judgment of Appellate Court reversed in part;*
*decree of circuit court affirmed.*