(No. 35041.—⬛)

JOHNSTON A. BOWMAN *et al.*, Appellants, *vs.* ARMOUR AND COMPANY *et al.*, Appellees.

*Opinion filed May 22, 1959—Rehearing denied September 22, 1959.*

44

FRANK J. DOWD, ROTHSCHILD, HART, STEVENS AND BARRY, PAUL F. ELWARD, and WILSON & MCILVAINE, all of Chicago, for appellants.

KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of Chicago, (HOWARD ELLIS, LESLIE HODSON, EDWIN T. SUJACK, GEORGE E. LEONARD, JR., and LOUIS R. MILLER, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an equity proceeding for a declaratory judgment seeking to determine the validity of a 1954 amendment to the articles of incorporation of the defendant, Armour and Company, an Illinois corporation. The plaintiffs-appellants here seek to have the amendment declared invalid and further seek a declaration that action taken pursuant to that amendment be declared ineffective.

The original plaintiffs, as well as the intervenors, are owners of cumulative convertible prior preferred stock of Armour and Company, hereinafter referred to as "Armour." The stock will, in this opinion, be referred to as the "prior stock." The plaintiffs assert that the 1954 plan of re-capitalization contained in the amendment operates to deprive them of rights and privileges as holders of the prior stock contrary to constitutional inhibitions.

The case was heard below on an agreed statement of facts, documents, and testimony. The trial court, in a written opinion, found the issues for the defendants and held the recapitalization plan as embodied in the amendment to the articles of incorporation to be valid and further held that the applicable sections of the Business Corporation Act that were construed as the statutory basis for the authorization of the amendment were constitutional.

Constitutional questions having been presented below and decided, this court has jurisdiction on direct appeal.

In 1954, prior to the plan of recapitalization here under attack, the capital structure, debt and surplus of Armour and Company, in thousands of dollars, were:

| | |
|---|---:|
| Long-term debt | $124,699 |
| Prior stock | 50,000 |
| Common stock | 20,329 |
| Capital and paid-in surplus | 33,619 |
| Earned surplus | 134,079 |
| | $362,726 |

The prior stock had, by the terms of the stock certificates and the articles of incorporation, these material features: It had a stated value of $100 per share. Cumulative dividends of $6 per year were to be paid when and if declared and each share was convertible for six shares of common stock and could, at the option of the company, be redeemed at a price of $115 per share plus accumulated dividends. Each share of the prior stock had one vote in corporate matters and enjoyed certain preferences in the event of liquidation, whether voluntary or involuntary.

The plan of recapitalization proposed to amend the articles of incorporation by a vote of two thirds of the holders of each class of stock providing that the board of directors would be authorized to redeem the prior stock "at a price of $120.00 per share, payable in (i) debentures of like principal amount of the company, maturing November 1, 1984, bearing interest at the rate of 5% per annum cumulative from November 1, 1954, and to be subordinated to other indebtness of the Company, and having such sinking fund provisions and other terms and conditions as the board of directors of the company may determine, (ii) one transferable warrant for the purchase of one share of common stock of the Company, at such price or prices and having such other terms and conditions as the board of directors of the company may determine, (iii) and no more."

The debentures were to mature in 30 years and the stated interest rate of 5 per cent was payable out of earnings. The redemption as authorized by the amendment would, upon the exercise of the power to redeem as contained in the amendment, be compulsory. The amendment was voted upon by the shareholders and adopted by a vote of more than two thirds of each class of outstanding stock, the shareholders voting by class.

Questions relating to the necessity of the recapitalization, the tax advantages to the corporation, the fairness

of the plan, the financial consequences of its adoption on the prior stockholders and the infringement of "contractual" or "vested" rights, as well as constitutional rights, have been ably presented on the appeal of this case. However, in view of the fact that our interpretation of the applicable provisions of the Business Corporation Act is determinative of this appeal, it is unnecessary to consider the question of fairness or, in fact, to consider any question other than statutory interpretation and *laches*.

The charter or articles of incorporation of an Illinois corporation is a contract of a three-fold nature. It is operative as between the corporation and the State and it creates rights and duties as between the corporation and its shareholders, as well as between the shareholders themselves. (*Western Foundry Co.* v. *Wicker*, 403 Ill. 260.) The express nature of the contract is not limited to the specific language found in the articles of incorporation but the contract in its entirety includes the statutory provisions in force when the charter is granted as though those statutory provisions were literally recited in the contract. (*Kreicker* v. *Naylor Pipe Co.* 374 Ill. 364; *Tennant* v. *Epstein,* 356 Ill. 26.) The holders of the prior stock thus held rights and privileges as expressed in the articles prior to the amendment subject at all times to variation, modification or change to the extent that the articles could be amended from time to time as authorized by the Business Corporation Act.

Section 52 of the Business Corporation Act (Ill. Rev. Stat. 1957, chap. 32, par. 157.52,) provides in part as follows:

"Right to Amend Articles of Incorporation. A corporation may amend its articles of incorporation, from time to time, in any and as many respects as may be desired, provided that its articles of incorporation as amended contain only such provisions as might be lawfully contained in original articles of incorporation if made at the time of

making such amendment, and, if a change in shares or an exchange or reclassification of shares is to be made, such provisions as may be necessary to effect such change, exchange, or reclassification as may be desired and as is permitted by this Act.

"In particular, and without limitation upon such general power of amendment, a corporation may amend its articles of incorporation, from time to time, so as:

\* \* \*

"(g) To change the designation of all or any part of its shares, whether issued or unissued, and to change the preferences, qualifications, limitations, restrictions and the special or relative rights in respect of all or any part of its shares, whether issued or unissued."

The authority for the amendment here in question must be found in the quoted portion of section 52 subject to the general limitation that the amendment, in order to be valid, must be by the affirmative vote of two thirds of the outstanding shares of each class of stock issued. (See sec. 53(c) and sec. 54, Business Corporation Act.) In this connection, it is established and uncontroverted that more than two thirds of each class voted for the amendment.

It is, of course, a fundamental rule of statutory construction that the grant of power contained in the Business Corporation Act, like any other grant of power, is to be strictly construed and the enumeration of the series of powers therein contained exclude other powers not fairly incidental to the powers expressly granted. *Mercantile Trust Co.* v. *Kastor,* 273 Ill. 332.

The grant of power to amend found in section 52 of the act and, specifically material to this case, the power found in subparagraph (g) is very broad. Amendments, however, must be limited to matters that would be permitted in the original articles, and section 14 of the Business Corporation Act relating to preferences in original

articles clearly contemplates the issuance of shares redeemable at the option of the company at a price not exceeding the price fixed by the articles of incorporation. In the case of *Western Foundry Co.* v. *Wicker,* 403 Ill. 260, in construing the 1919 Corporation Act, we held that undeclared accumulated dividends on preferred stock were rights and privileges and could, by amendment, be decreased or canceled. We there stated the rule to be "that where the articles of incorporation, or the pertinent provisions of the applicable corporation act, provide that a prescribed majority of the shareholders, voting by classes, as necessary, shall have the power to alter or change the 'rights and preferences' of the preferred stock, this power extends to and includes the right to cancel accrued undeclared preferred dividends. Accordingly, we hold that defendant acquired his shares of the preferred stock of the plaintiff corporation subject to a contractual condition investing a two-thirds majority of the preferred shareholders with the right to adopt a charter amendment eliminating unpaid accrued dividends on the preferred stock. This was defendant's contract with the corporation and with the other shareholders and he is bound by it. * * * We are further satisfied that the right of a preferred shareholder to receive unpaid accumulated dividends, regardless of how characterized, is no different from the many other rights possessed by preferred shareholders. Notwithstanding its frequent description as a 'vested right,' or 'a vested property right' or 'right in the nature of a debt,' in the final analysis it is nothing more than a simple contract right. The same contract creating the right to accrued cumulative dividends may, by other terms and conditions, render the right defeasible by appropriate action of the majority of the members of the corporation. Furthermore, although an amendment cancelling accrued dividends appears to have a retroactive effect, its actual operation is prospective only. The accrual of dividends by the

mere lapse of time does not alter the nature or character of the dividend rights of preferred stock. Where a corporation fails to declare a dividend on its preferred stock, the only change effected is an enlargement of the size or quantity of the right to dividends. The character of the right remains unchanged and continues to be prospective. Lastly, it should be observed that the charter provision authorizing a change in the rights of the preferred stock itself creates a contractual right in the shareholders and it is the validity of a proper exercise of this right to change the defeasible right of the preferred stock which is here sustained."

The cited case is thus authority for the general statement that rights and privileges of shareholders are defeasible by the adoption of amendments to articles of incorporation. The express holding of that case that accumulated arrearages on preferred stock could be reduced or canceled is now found as part of the Business Corporation Act. (Sec. 52.)

The language of subparagraph (g) of section 52, authorizing amendment of articles of incorporation makes rights and privileges of preferred stock defeasible to the extent that amendments are authorized. The question here is not one of the existence of the power to amend nor is the question here one of the authority to divest certain rights and privileges. Rather, the question is whether this quoted language gives to Armour the right to amend to the extent that holders of the prior shares are required to surrender their ownership in said stock and accept in lieu thereof the earnings bonds as specified.

The amendment, whether it is viewed as effecting a purchase of the prior stock with bonds or as a compulsory redemption thereof, obviously contemplates that the fundamental relationship of stockholder as between the holders of the prior stock and Armour will be changed and the prior

stockholders will become mere creditors of the company.

A share of stock in a corporation is a unit of interest in the corporation and it entitles the shareholder to an aliquot part of the property or its proceeds to the extent indicated. The interest of a shareholder entitles him to participate in the net profits in proportion to the number of his shares, to have a voice in the selection of the corporate officers and, upon dissolution or liquidation, to receive his portion of the property of the corporation that may remain after payment of its debts. A change in preferences, qualifications or relative rights may increase or decrease the right to participate in profits, the right to participate in distribution of the assets of the corporation on dissolution or liquidation, or other indicia of ownership manifest by the ownership of corporate stock. But the change here contemplated is more than that; it is a compulsory redemption or a purchase of the stock rather than a divestiture of certain rights and privileges.

The plan of recapitalization here is not a divestiture of rights or privileges or an increase or decrease in relative rights of shares but it is, as we have said, a compulsory redemption or purchase that results in a change of the status of the shareholder from that of a shareholder to that of a creditor. The ownership of some equity in the corporation is not modified or changed leaving some resulting ownership, but it is liquidated and a corporate owner prior to the amendment finds that subsequent to the amendment he is a creditor.

A corporation has no inherent right to redeem its preferred stock and can do so only if authorized by law. (Fletcher Cyclopedia, Corporations, vol. 11, Permanent Ed., sec. 5309.) Section 14 of our Business Corporation Act provides for the issuance of preferred shares and further provides that the same may be redeemed "at not exceeding the price fixed by the articles of incorporation. * * *"

The articles of Armour expressly provided that the prior stock could be redeemed at a price of $115 per share plus accrued dividends.

This provision, in effect, was the grant of an option by the owners of the prior stock to Armour authorizing redemption on the stated terms. Notwithstanding this provision, it is the contention of the defendants in this case that the holders of the prior stock can be forced to permit the redemption on the basis of the issuance of earnings bonds.

It is the position of the plaintiffs that the only way the stock can be redeemed is by compliance with the provisions of the article and the payment in dollars of the sum therein provided. The plaintiffs assert that the word "price," as used in the statute, is definable only to mean money and not bonds or other evidences of debt.

It is a well established rule that in the absence of contrary statutory definition, words used in a statute are used in their popularly understood meaning. (*Farrand Coal Co. v. Halpin,* 10 Ill.2d 507.) The word "price" has a narrower meaning and is more restricted in scope than the word "consideration," and "price" has been defined as the amount of money given or received in exchange for anything. (See Webster's New International Dictionary, 2d Edition.) *Theberge v. Canadian Pacific Railway Co.* 119 Vt. 193, 122 A.2d 848.

The word "price" is used in the redemption language of section 14 and is also found in section 15 of the Business Corporation Act with reference to the issuance of preferred or special shares in a series. It is there provided that there may be variations between series of stock as to price. Further, in section 18 of the Business Corporation Act, the word "price" is not found, and in that section it is obvious that when the legislature wished to broaden the meaning of the term it did not use the word "price" but used the word "consideration" and defined it to include

many things—money, property, labor or services actually performed.

A consideration of these sections can lead us only to the conclusion that when the legislature makes reference to the payment of money it uses the word "price." When it is concerned with a broader definition it found adequate words to express its intention.

We have carefully considered the cases cited from other jurisdictions with reference to redemption or retirement of stock out of bonds and a fair statement of the reasoning there found may be found in section 5315 of Volume 11, Fletcher Cyclopedia of Corporations, stating the general rule to be that preferred shares convertible by the holder into bonds or credit obligations call, in effect, for a purchase by the corporation of its own shares, and like provisions for compulsory redemption should be expressly prohibited. The case there discussed of *Berger* v. *United States Steel Co.* 63 N.J. Eq. 809, relates to the redemption of preferred stock by the issuance of bonds therefor and was based upon a specific and peculiar statutory provision, and even in that case it is to be noted that rather strict limitations were imposed as a condition precedent to such redemption and it was required that the holder of the stock sought to be redeemed consent thereto.

It seems to us to be evident that the effect of the amendment here sought to be sustained was, in fact, a purchase with bonds by the Armour company of its own outstanding preferred stock without the consent of the owners of said stock. While the Business Corporation Act does, under certain circumstances, permit a corporation to purchase its own stock, it can do so only when the shareholder is willing to sell, and no amendment passed with the approval of a two-thirds vote of the shareholders can force him to sell.

Further, that section 52 (g) should be construed as we have indicated is made more clear by referring to the express safeguards found in the Business Corporation Act

applicable to merger. Section 61 expressly provides that on merger the shares of each merging corporation may be converted into shares or other securities or obligations of the corporation. Section 70 provides safeguards for shareholders who may dissent from the merger by permitting them to obtain the fair market value of their shares. To construe section 52 as to authorize the recapitalization plan here under consideration would mean that a minority shareholder would not have the protection on recapitalization that the legislature has provided on merger, even though the recapitalization plan could more drastically affect his interest than would a merger. It is obvious to us that the legislature did not intend to authorize a recapitalization program by amendment of the nature and to the extent of the one here involved but, rather, by the language of section 52(g) contemplated only changes in relative rights, privileges, restrictions or limitations. Since it is our view that the amendment here was not authorized by the Business Corporation Act, it thus becomes unnecessary to consider other questions presented on this appeal than the question of *laches*.

The defense of *laches* has been raised and discussed in the briefs in this case. As to the original plaintiffs, the record is clear that within a few days after receiving a notice of redemption contrary to that contained in the earlier articles of incorporation under which their shares had been issued, the corporation was notified by the attorney for the original plaintiffs that he had been instructed to take such appropriate action as might be necessary to establish their rights as shareholders. Apparently none of the persons against whom the defense of *laches* is now raised attended the meeting or approved the amendment in any manner or did anything that would lull the corporation into a misunderstanding of their position with respect to the plan of recapitalization. In passing upon the asserted defense of *laches,* the crucial question is whether under the

facts of the particular case the delay is unreasonable or amounts to lack of diligence. *McCartney* v. *McCartney*, 8 Ill.2d 494.

This plan of reorganization was adopted on December 7, 1954, and this proceeding was instituted on January 11, 1955. On the basis of those facts, we cannot say that there has been a lack of diligence sufficient to establish *laches*.

For the reasons stated, the decree of the superior court of Cook County is reversed and the cause is remanded to that court for the entry of a decree in accordance with the views here expressed.

*Reversed and remanded, with directions.*